[Nos. E006402, E006769. Fourth Dist., Div. Two. Feb. 21, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,
Defendant and Appellant.

[Opinion certified for partial publication.**]

**Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts C.2, C.3 and D.

**COUNSEL**

Mazo & Vidor and Paul M. Vidor for Defendant and Appellant.

Grover C. Trask II, District Attorney, and Don R. Inskeep, Assistant District Attorney, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—American Bankers Insurance Company of Florida (hereinafter, the Surety) appeals from two orders in which the superior court denied its motions to vacate the forfeiture of its bail bond and exonerate the Surety. After consolidating the appeals for decision, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 9, 1988, the Surety filed its bail bond in the sum of $40,000 on behalf of Mr. Dyer, the defendant. That bond was declared forfeited (first forfeiture) on July 8, 1988, when the defendant failed to appear for a trial status conference. The same day, the clerk of the court gave notice of that forfeiture by mailing a copy to the Surety and to its bail agent, Law-

ton's Bail Bonds (Lawton), as required by Penal Code section 1305, subdivision (a).[1]

On July 21, 1988, the defendant appeared in court with counsel, and requested that the forfeiture be set aside and the bail reinstated. That motion was denied, but another hearing was set for August 3, 1988, to permit defense counsel to make a more complete showing as to why there was good cause for the defendant's failure to appear.

That hearing was conducted on August 1, 1988, having been advanced at the request of defense counsel. At that time, the defendant renewed his motion for reinstatement, and supported it by filing a written consent to reassumption of liability which Lawton had executed and given to defense counsel for the July 21 hearing. The motion to reinstate was granted, and the defendant was released on the same bond.

The bond was again declared forfeited (second forfeiture) on August 26, 1988, when the defendant failed to appear on that date for a trial readiness conference. The clerk again undertook to give notice of forfeiture pursuant to section 1305. Its certificate of mailing reflected that copies of the notice had been sent to both the Surety and Lawton on August 29, 1988. In fact, however, the clerk had mistakenly inserted Lawton's notice into an envelope addressed to Cal Rynerson Bail Bonds, the bail agent for another bond by the Surety which had been forfeited in the same department the same morning.

Mr. Rynerson received Lawton's notice of forfeiture on September 1, 1988, and mailed it to Lawton that same day. Lawton received it from Mr. Rynerson on September 5, 1988, seven days after it was erroneously mailed by the court clerk; however, he never received a copy directly from the clerk.

### CONTENTIONS

The Surety made three separate motions to vacate the second forfeiture and to exonerate itself from liability under the bond. Collectively, the motions raised four distinct grounds for exoneration, each of which the Surety continues to assert on appeal:

(1) The Surety was released from its liability under the bond by the court clerk's failure to mail a notice of the second forfeiture directly to Lawton within 30 days;

---

[1] All further section references are to the Penal Code unless specified otherwise.

(2) The reinstatement of the bond after the first forfeiture was invalid because of the failure to give the Surety advance notice of the court's intention to do so;

(3) The trial court was estopped from reinstating the bond after initially refusing to do so; and

(4) The Surety should have been exonerated because the defendant was eventually placed in custody.

All of the Surety's contentions are either without merit or untimely.

## DISCUSSION

### A. FORFEITURE AND EXONERATION IN GENERAL

Section 1305 describes the circumstances under which a bail bond or other undertaking may be forfeited, as well as those under which such a forfeiture may be vacated and the surety exonerated from liability under the bond. While the relevant text of that section is quoted below,[2] it generally

---

[2] When the Surety's motions were made in 1988 and 1989, subdivision (a) of that section provided in relevant part:

"If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his or her presence in court is lawfully required, . . . the court must direct the fact to be entered upon its minutes, and, unless within 15 court days from arraignment no complaint has been filed or the charges have been dismissed, the undertaking of bail, or the money deposited instead of bail, as the case may be, must thereupon be declared forfeited, and, if the amount of the forfeiture exceeds two hundred dollars ($200), the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety on the bond or depositor of money instead of bond, and shall execute a certificate of such mailing and place it in the court's file in the case. If the surety is an authorized corporate surety insurer, and if the bond has plainly printed or stamped thereon the address of its principal office, such notice shall be mailed to such surety at such address, and mailing to the bail agent or solicitor who posted the bond shall not constitute compliance with this section; the clerk shall at the same time send a copy of such notice to the bail agent or solicitor who posted the bond. If the clerk fails to mail such notice within 30 days after such entry, the surety or depositor shall be released from all obligations under the bond.

"But if at any time within 180 days after such entry in the minutes or, if mailing of notice of forfeiture is required, within 180 days after mailing such notice of forfeiture, the defendant appears, and satisfactorily excuse [sic] the defendant's neglect or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court shall, under terms as may be just and that are equal with respect to all forms of pretrial release, direct the forfeiture of the undertaking or the deposit to be set aside and the bail or the money deposited instead of bail exonerated immediately. The court may order the bail reinstated and the defendant released again on the same bond after notice to the bail, provided that the bail has not surrendered the defendant. If at any time within 180 days after such entry in the minutes or mailing as the case may be, the bail should surrender the defendant to the court or to custody, the court shall under terms as may be just direct the forfeiture of the

provides that upon a defendant's failure to appear in court, the bail bond is declared to be forfeited, and notice of that forfeiture is sent to the surety and the bail agent. The surety is entitled to have the forfeiture set aside, and to be exonerated from any liability under the bond, if, within 180 days of notice of the forfeiture, the defendant is returned to court or custody, and the surety shows that the defendant's prior absence was not "with the connivance" of the surety or its agent. If the return of the defendant to court is not accompanied by the surety's demand for exoneration, however, the court has the discretion to "order the bail reinstated and the defendant released again on the same bond after notice to the bail . . . ."

### B. THE FIRST MOTION TO EXONERATE

The Surety's first motion to set aside the forfeiture and obtain exoneration was filed on November 15, 1988, 78 days after the clerk mailed the notice of the second forfeiture, well within the 180-day limit. Thus, the timeliness of this motion was unquestionable.

 The motion was based on the theory that the bond had been exonerated by operation of law when the court clerk mistakenly mailed Lawton's copy of the notice of forfeiture to Mr. Rynerson. The Surety reaches this conclusion by reasoning that:

(1) "It has been repeatedly held that since the law disfavors forfeitures and statutes imposing them, such as this one, the statute must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture. It is also to be construed in light of the principle that 'where a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction.'" (*People* v. *Wilshire Insurance Co.* (1975) 46 Cal.App.3d 216, 220 [119 Cal.Rptr. 917], quoting from *Burtnett* v. *King* (1949) 33 Cal.2d 805, 807 [205 P.2d 657, 12 A.L.R.2d 333].)

(2) Subdivision (a) of section 1305 expressly requires the clerk of the court to "send a copy of [the notice of forfeiture] to the bail agent . . . who posted the bond," and specifies that if "the clerk fails to mail such notice

---

undertaking or the deposit to be set aside and the bail or the money deposited instead of bail exonerated immediately.

" . . . . . . . . . . . . . . . . .

"Unless waived by the district attorney or other prosecuting attorney, no order discharging the forfeiture of the undertaking or deposit shall be made without notice by the bail to the district attorney or prosecuting attorney, who may request a hearing within 10 days after receipt of the notice. The court shall then set the date, time, and place of hearing and give notice to the district attorney or prosecuting attorney and to the bail."

within 30 days after [entry of the forfeiture in the court's minutes], the surety . . . shall be released from all obligations under the bond."

(3) Here, despite this requirement, the court clerk erroneously mailed the notice to Mr. Rynerson, but never directly to Lawton. Therefore, even though Lawton received actual notice of the forfeiture from Mr. Rynerson well within the 30 days, a strict construction of the statute compels the court to conclude that the court did not comply with the statutory requirement, and that the Surety was exonerated upon the expiration of the 30th day.

We decline to follow the narrow path proposed by the Surety. ■ While it is appropriate for courts to strictly construe any ambiguities against the party seeking to enforce the forfeiture, we will not hesitate to enforce a forfeiture when the application of a statute or contract is reasonably clear. Nor will we blindly follow the literal meaning of every word if to do so would frustrate the legislative purpose of those words. As another court has said in interpreting this same section: "It is the prime purpose of the courts, in examining a statute, to ascertain and effectuate the legislative purpose; a statute will not be given an interpretation in conflict with its clear purpose, and general words used therein will be given a restricted meaning when reason and justice require it, rather than a literal meaning which would lead to an unjust and absurd consequence." (*People* v. *Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51, 56 [164 Cal.Rptr. 159].)

■ Applying those rules to this portion of the statute, the obvious legislative purpose in directing that notices of forfeiture be mailed is to require that reasonable efforts are taken to give actual notice of the forfeiture of the bond to both the surety and the bail agent within 30 days of the date of that forfeiture. To minimize the possibility that the accuracy of the record of the giving of such notice is tainted by bias or self-interest, it places the burden of mailing notice on the only neutral party: the court itself. Thus, the statute has two related objects: to employ a reasonably effective means of notice, and to create a reasonably reliable record of that notice.

■ Here, the goal of effective notice was achieved: both the Surety and Lawton, its bail agent, received actual notice of the forfeiture in a timely fashion. The Surety received it directly from the court; Lawton received his copy via the office of Mr. Rynerson.

In effect, the Surety asks us to ignore the successful notice to Lawton merely because the clerk's record of how that notice was given is incorrect. The Surety fails to realize, however, that the need to prove the giving of

notice, and thus the need to consult the clerk's record, arises only if the fact of notice is disputed. Here, Lawton admits to having received a copy of the notice well within the 30 days allowed by statute.[3] Such an admission renders the precise manner of service irrelevant. Since the manner in which Lawton received notice is not at issue, the clerk's failure to mail directly to Lawton does not vitiate the validity of that notice.

The contrary statutory interpretation urged by the Surety is a literal but absurd construction. There is no reason why the Surety should be released from its liability under the bond merely because the return address on the envelope in which Lawton received his copy of the notice of forfeiture was that of Cal Rynerson Bail Bonds instead of the court clerk. There are times when there are good reasons for form to triumph over substance, but this is not one of them.

## C. THE SECOND MOTION TO EXONERATE

### 1. *The Timeliness of the Motion*

The Surety's second and third motions were both heard at the same time. At that hearing, the People argued that the third motion was untimely, but conceded that the second motion had been timely filed.

Ordinarily, such a concession would constitute a judicial admission, which would remove the issue from controversy. (See 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 648, pp. 633-634.) ■ However, because litigants cannot confer subject matter jurisdiction by consent where none exists by law (*Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 10, pp. 374-376), the People's concession is not decisive if the 180-day time limit is jurisdictional.

#### a. *The Statutory Time Limit Is Jurisdictional.*

The 180-day period has sometimes been referred to as a statute of limitation. (*People* v. *Stuyvesant Insurance Co.* (1963) 216 Cal.App.2d 380, 381 [31 Cal.Rptr. 208].) ■ Because an action may generally proceed to

---

[3] This is the fact which distinguishes the various cases relied upon by the defendant: *People* v. *Wilshire Insurance Co., supra,* 46 Cal.App.3d 216 [119 Cal.Rptr. 917]; *People* v. *Earhart* (1972) 28 Cal.App.3d 840 [104 Cal.Rptr. 322]; *County of Los Angeles* v. *Resolute Insurance Co.* (1972) 22 Cal.App.3d 961 [99 Cal.Rptr. 743]; and *People* v. *Surety Insurance Co.* (1984) 158 Cal.App.3d Supp. 1 [204 Cal.Rptr. 893]. In none of those cases did the record indicate that, despite the defective mailing, both the surety and its agent received actual notice of the forfeiture.

judgment if the defense of a statute of limitation is waived (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 314, p. 345), a statute of limitation is usually not jurisdictional.

■ However, the statutory deadline at issue here does limit the power of the court to proceed. As the Supreme Court has said with respect to section 1305, " 'where a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction.' " (*People v. Black* (1961) 55 Cal.2d 275, 277 [10 Cal.Rptr. 459, 358 P.2d 915], quoting from *Burtnett v. King, supra*, 33 Cal.2d at p. 807; see also *People v. Stuyvesant Insurance Co., supra*, 216 Cal.App.2d at p. 382.) Since the 180-day period prescribed by section 1305 is jurisdictional, a court is powerless to vacate a forfeiture unless a motion for relief from forfeiture is made within that time frame. The consent of the People cannot cure a late filing.

> b. *The Statutory Time Limit Is Not Extended Five Days When the Notice of Forfeiture Is Mailed.*

The People apparently believed the second motion to be timely because of their understanding that the 180-day period specified in section 1305 was extended to 185 days because the notice of forfeiture had been mailed. That was the holding in *People v. National Auto. & Cas. Ins. Co.* (1979) 92 Cal.App.3d 907 [155 Cal.Rptr. 602], in which the court relied on language formerly in the fourth paragraph of subdivision (a) of section 1305, which had required that any motion for relief from forfeiture be brought by noticed motion, filed within 180 days, and served "in compliance with Section 1010 of the Code of Civil Procedure." The court there held that the reference to Code of Civil Procedure section 1010 had the effect of indirectly incorporating the terms of Code of Civil Procedure section 1013, which at that time provided that the time within which "a right may be exercised, or an act is to be done," was extended by five days if the service of notice had been by mail. It concluded that a motion for relief was timely if filed within 185 days of the service by mail of the notice of forfeiture. (92 Cal.App.3d at p. 912; see also: *People v. Swink* (1984) 150 Cal.App.3d 1076, 1078, fn. 2 [198 Cal.Rptr. 290]; *People v. Souza* (1984) 156 Cal.App.3d 834, 838-839 [203 Cal.Rptr. 80]; and 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, § 2032, p. 2396.) On the other hand, another court construing the same version of section 1305 came to precisely the opposite conclusion. (*County of Los Angeles v. Surety Insurance Co.* (1984) 162 Cal.App.3d 58, 64-65 [208 Cal.Rptr. 263].)

It is not necessary for us to decide whether the *National Automobile* court was correct in its evaluation of the significance of the reference to Code of

Civil Procedure section 1010, because that reference was deleted when section 1305 was amended in 1985. (Stats. 1985, ch. 1486, § 1, p. 5482.) Therefore, the fact that the jurisdictional limit prescribed by the statute is 180 days from the date of mailing of the notice of forfeiture, rather than 185 days, is no longer subject to debate.

 c. *The Motion Was Timely.*

 Under the unique facts of this case, we deem the 180-day period to have started to run on September 5, 1988.[4] The Surety's second motion was filed on March 1, 1989, 177 days later. Therefore, the motion was timely.

 C.2.-D.*

. . . . . . . . . . . . . . . . . . .

## DISPOSITION

The orders denying the various motions for exoneration are affirmed.

Timlin, J., and McDaniel, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied May 15, 1991.

---

 [4] While the court clerk mailed the notice of forfeiture to the Surety on August 29, 1988, it would be inappropriate to use that date for the commencement of the statutory period because the statute also requires service on the bail agent. Since the clerk mistakenly failed to give notice to the bail agent in the precise manner prescribed by the statute, service should not be deemed complete unless and until we know that the purpose of the statute has been achieved, i.e., that the bail agent has received the intended notice. That did not occur until September 5, 1988, the date that Lawton received the notice from Mr. Rynerson.

 * See footnote *ante,* page 1289.

 † Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.