[No. B137602. Second Dist., Div. Four. Aug. 16, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
AMERICAN CONTRACTORS INDEMNITY COMPANY, Defendant and
Appellant.

[No. B144246. Second Dist., Div. Four. Aug. 16, 2001.]

COUNTY OF LOS ANGELES, Plaintiff and Appellant, v.
AMERICAN CONTRACTORS INDEMNITY COMPANY, Defendant and
Respondent.

## COUNSEL

Lloyd W. Pellman, County Counsel, Louis W. Aguilar, Assistant County Counsel, H. Anthony Nicklin, Principal Deputy County Counsel; Greines, Martin, Stein & Richland, Timothy T. Coates and Carolyn Oill for Plaintiff and Appellant and for Plaintiff and Respondent.

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant and for Defendant and Respondent.

## OPINION

**CURRY, J.**—This case involves two consolidated appeals. In the first (B137602), American Contractors Indemnity Company (American Contractors) appealed from orders denying its motions to vacate forfeiture of a bond. In the second (B144246), the County of Los Angeles (County) appealed from an order setting aside summary judgment and exonerating the same bond. Both appeals present the issue of whether the failure to give notice of forfeiture in precise accordance with Penal Code section 1305, subdivision (b)[1] exonerates a bond. The second appeal also raises the issue of how to calculate the last day on which motion for summary judgment on a bond may be granted. We agree with American Contractors that it was not given proper notice of forfeiture, which, under the statute, must result in release of its obligation on the bond.

### FACTUAL AND PROCEDURAL HISTORY

*No. B137602*

On February 16, 1999, Hyun G. Kang was found guilty of multiple counts of assault, robbery, and rape. On February 26, 1999, Kang was released pursuant to a $2.5 million bond posted by OK Bail Bonds acting as an agent for American Contractors. Kang was ordered to reappear on April 6, 1999, at 8:00 a.m. for a sentencing hearing.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Shortly after his release, the district attorney's office became concerned that Kang had fled the United States. On March 10, 1999, nearly a month before the scheduled sentencing hearing, the district attorney's office brought an ex parte motion for revocation of bail. The trial court revoked bail, issued a bench warrant for Kang's arrest and, according to the parties, ordered bail forfeited as of that date. On March 17, 1999, the clerk of the court mailed notice of order forfeiting bail for failure to appear on March 10, 1999, to OK Bail Bonds and American Contractors. The notice stated: "Your contractual obligation to pay each bond will become absolute on the 181st day following the date of the mailing of notice of the forfeiture unless the Court orders the forfeiture set aside and the bond reinstated or exonerated."

On May 25, 1999, American Contractors filed a motion to vacate the forfeiture and exonerate bail, contending that the court lacked jurisdiction to declare a forfeiture unless the defendant failed to appear at a hearing where his presence was lawfully required. According to American Contractors, the proper procedure would have been to revoke bail on March 10, but to postpone forfeiture until April 6, when Kang was scheduled to appear. The moving papers further stated that the court lost jurisdiction over the bond, having failed to declare forfeiture on April 6.

At the hearing on June 10, 1999, the court presented counsel with an excerpt from the reporter's transcript for the April 6 sentencing hearing in which the court, having been informed that Kang was not present, stated: "No answer by the defendant Hyun Kang, bail posted is ordered forfeited, and bench warrant is issued."[2] Counsel protested that American Contractors had no notice of any such forfeiture. The court replied: "Obviously, you were on notice that the bail had been forfeited. You made this motion." The court granted the motion to vacate the March 10 forfeiture, ruling that the forfeiture was indeed erroneous because the defendant "was not ordered to be present on that date and did not receive notice of the People's motion to forfeit bail." The court went on to conclude, however, that it had "retain[ed] jurisdiction to forfeit bail on April 6, 1999 when the defendant was ordered to appear." The court then ordered the bail department "to prepare any and all necessary forfeiture notices to the surety reflecting a forfeiture date of April 6, 1999."[3] The notice was subsequently mailed by the clerk to OK Bail Bonds and American Contractors on July 1.

On July 15, 1999, American Contractors filed a motion to reconsider the June 10 order on the ground that the docket failed to reflect that the court

---

[2] No representative of American Contractors was present in court on that day.

[3] The County contends in its brief on appeal that the notice was sent "at counsel's request . . . ." In fact, the transcript reflects this was a sua sponte decision by the court in response to counsel's argument that American Contractors had not received any notice of the April 6 forfeiture.

ordered bail forfeited on April 6, that a forfeiture number was assigned, or that a notice of forfeiture was mailed to the bail agent and surety. The declaration in support of the motion indicated that Kang had been detained by the bail agent and identified by local law enforcement personnel in Seoul, South Korea on April 8. A declaration from an American Contractors vice-president indicated that American Contractors had conducted a search of the docket in order to determine if bail had been forfeited on April 6, and found nothing.

At a hearing on July 29, the motion was denied,[4] the court "find[ing] that the parties were on notice of the bond forfeiture on March 10, 1999 and on June 10, 1999." The court further ruled that "[t]he 180 days, time period to produce the defendant, runs from July 1, 1999." At the hearing, the court expressed the view that this was a case of either "premature notice" referring to the March notice of forfeiture or actual notice based on the discussion at the hearing on June 30. While not strictly in accord with the law as written, the court believed this notice sufficed to meet the statutory requirements, and that American Contractors had not been prejudiced by the failure to comply with the statute.

American Contractors filed its notice of appeal from the court's June 10 and July 29 orders on December 6, 1999.

*No. B144246*

On March 17, 2000, an order granting summary judgment on the bond was entered pursuant to section 1306.[5] American Contractors filed a motion to set aside the summary judgment. In its moving papers, American Contractors again argued that the court lost jurisdiction due to failure to mail timely notice of the April 6, 1999, forfeiture. It further argued that the summary judgment order had been entered long past the jurisdictional

---

[4]Although this was considered by the parties and the trial court to be a denial of a motion for reconsideration, this court concluded in an order denying the County's motion to dismiss the first appeal dated November 1, 2000, that "[a] fair reading of [American Contractors'] July 15, 1999, motion [for reconsideration] shows that it is a challenge to the April 6, 1999, forfeiture and not an application for reconsideration of its earlier motion challenging the premature order of forfeiture entered on March 10, 1999." That earlier motion had been granted by the trial court in its June 10, 1999, order that vacated the March 10 forfeiture, although the bond was not exonerated due to the intervening April 6 forfeiture.

[5]Section 1306, subdivision (a) provides that when any bond is forfeited and the deadlines specified in section 1305 for setting aside the forfeiture have passed, "the court which has declared the forfeiture . . . shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound."

deadline for entry contained in section 1306, subdivision (c).[6] The County contended in opposition (1) that notice was received through the "premature" March notice of the March 17 forfeiture and through the bail agent's knowledge that Kang had fled to South Korea, and (2) that the summary judgment was timely because it was entered within 275 days of July 1, 1999, the day written notice of the April 6 forfeiture was mailed.

The trial court granted the motion to set aside summary judgment and exonerated the bond, stating in its order: "The notice of the forfeiture was not mailed until approximately 90 days following the forfeiture. . . . [M]ailing of the notice within 30 days of the forfeiture was a mandatory obligation, failure of which may not be excused by the premature notice, and shall result in the discharge of the forfeiture and exoneration of the bail. . . . [¶] . . . The fact . . . that the surety may have known of the problem or the whereabouts of the defendant does not excuse the failure to timely mail the notice of forfeiture[] [and] the time of the entry of the summary judgment is immaterial due to the initial failure of the court to mail the notice within the 30-days."[7]

This ruling was appealed by the County on August 18, 2000. We granted a motion to consolidate the two appeals on February 28, 2001.

DISCUSSION

I

The first issue is whether the failure to comply with the statutory notice provisions must result in exoneration of the bond. Section 1305, subdivision (b) states in relevant part: "If the amount of the bond . . . exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety . . . ." Where the surety is an authorized corporate surety, "and if the bond plainly displays the mailing address of the corporate surety and the bail agent, then notice of the forfeiture shall be mailed to the surety at that address and to the

---

[6]Section 1306, subdivision (c) provides: "If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."

[7]The hearings on the summary judgment motion and the motion to set aside were before Judge Fidler. The earlier rulings were made by a different judge. The County raises as a basis for reversal the de facto overruling of one trial judge's decision by another. While the practice of one judge overruling the decisions of another is improper, an appellate court cannot reverse a trial court's ruling which correctly follows the law merely because it disagrees with an earlier, incorrect ruling.

bail agent, and mailing alone to the surety or the bail agent shall not constitute compliance with this section." (*Id.*, 2d par.)

The statute goes on to provide that "[t]he surety . . . shall be released of all obligations under the bond if any of the following conditions apply: [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture. [¶] (2) The clerk fails to mail the notice of forfeiture to the surety at the address printed on the bond. [¶] (3) The clerk fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond." (§ 1305, subd. (b).)

The following general rule must be applied whenever courts are called upon to construe the laws governing bail bonds: " 'The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections 1305 and 1306 dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture.' [¶] The standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond." (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263].) Sections 1305 and 1306 are said to be "jurisdictional prescriptions." (*County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10, 16 [82 Cal.Rptr.2d 214].) "Failure to follow the jurisdictional prescriptions in sections 1305 and 1306 renders a summary judgment on the bail bond void. [Citation.]" (*County of Los Angeles v. Ranger Ins. Co., supra*, at p. 16; see also *County of Los Angeles v. Surety Ins. Co., supra*, at p. 62 ["It is well established in the case law that Penal Code sections 1305 and 1306 are subject to precise and strict construction."].)

In several cases, relatively minor noncompliance with the notice provisions of section 1305 was held to constitute grounds to vacate forfeiture and exonerate the bond. In *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 [119 Cal.Rptr. 917], for example, the defendant failed to appear for arraignment and the court ordered forfeiture of the bond. The next day, the defendant appeared and satisfactorily explained his absence, resulting in the forfeiture being set aside and the bail reinstated. The surety was not given notice of this forfeiture and reinstatement. Subsequently, the defendant did not appear for trial, and bail was ordered forfeited for a second time. This time notice was properly given, and summary judgment entered. The surety appealed on the ground that notice of forfeiture within 30 days was mandatory under the statutes, and that the failure to give the surety notice of the

first forfeiture order following the defendant's nonappearance at the arraignment resulted in its release from liability on the bond. The appellate court agreed: "[W]e perceive no escape from the conclusion that the failure to give the notice of the forfeiture invalidated the bond and rendered the judgment based thereon void." (*Id.* at p. 221.) The court further noted that "[f]ollowing the precepts of the strict construction required by firmly settled principles [citation] in this area," it was "probably precluded from inquiring into any prejudice the surety may have suffered as a result of the failure to precisely follow the statutory notice prescriptions." (*Id.* at p. 220, fn. omitted.)

The court in *Wilshire Ins. Co.* cited with approval the decisions in *County of Los Angeles v. Resolute Ins. Co.* (1972) 22 Cal.App.3d 961 [99 Cal.Rptr. 743], in which "the required notice was given by the clerk to the bail agent but not to the principal office of the surety" and "[t]he appellate court held the summary judgment void because it was founded upon a bond upon which the surety had been released as a matter of law by reason of the court's failure to have given the precise notice required by section 1305"; and *People v. Earhart* (1972) 28 Cal.App.3d 840 [104 Cal.Rptr. 322], in which the required notice "was mailed to the corporate surety but not to the bail agent" and "[t]he court held that the failure to follow the precise terms of the statute was fatal to a forfeiture of the bond." (*People v. Wilshire Ins. Co., supra,* 46 Cal.App.3d at p. 221.)

Relying on the above three authorities, the court in *People v. Surety Ins. Co.* (1984) 158 Cal.App.3d Supp. 1 [204 Cal.Rptr. 893], reversed summary judgment on a bond where notice was not mailed to the bail bondsman, but was directed to him at the address of the surety. The court found "the words [of section 1305] to be clear, plain and unambiguous. The statute mandates that notice shall be mailed to the surety at such address as is 'printed or stamped' on the bond, and that a copy of such notice shall be sent to 'the bail agent or solicitor who posted the bond' at the same time. The statute further specifies that '[i]f the clerk fails to mail such notice within 30 days after such entry, the surety or depositor shall be released from all obligations under the bond.' [Citation.]" (*People v. Surety Ins. Co., supra,* at p. Supp. 4.) The clerk's failure "to mail notice to the bail agent in accordance with the strict provisions of Penal Code section 1305, subdivision (a) . . . invalidated the bond and rendered the judgment based thereon void." (*People v. Surety Ins. Co., supra,* at p. Supp. 7.)

■ We agree that the words of the statute could hardly be more "clear, plain and unambiguous." The statute provides that "[t]he surety . . . *shall be released of all obligations under the bond* if . . . [¶] [t]he clerk fails to mail

the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture." (§ 1305, subd. (b), italics added.) We see no way of interpreting this provision other than the construction employed by the trial court in vacating the summary judgment and exonerating the bond.

The County relies on *People v. American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289, 1295 [278 Cal.Rptr. 314], overruled on another point in *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120 [97 Cal.Rptr.2d 858], for the proposition that the court should not "blindly follow" every word of the statute if doing so would "frustrate the legislative purpose . . . ." In *American Bankers*, the clerk mistakenly inserted the bail agent's notice into an envelope addressed to a different bail agent for the same surety. When the second bail agent received the envelope, it forwarded the notice to the intended bail agent who received the notice seven days after it was mailed by the clerk. (227 Cal.App.3d at p. 1292.) The surety moved to set aside forfeiture and obtain exoneration due to the failure to strictly comply with section 1305. Noting that "the goal of effective notice was achieved[] [because] both the Surety and Lawton, its bail agent, received actual notice of the forfeiture in a timely fashion," the court concluded that the interpretation urged by the surety was "literal but absurd." (*People v. American Bankers Ins. Co., supra,* at pp. 1295, 1296.) "There is no reason why the Surety should be released from its liability under the bond merely because the return address on the envelope in which [the intended bail agent] received his copy of the notice of forfeiture was that of [the second bail agent] instead of the court clerk. There are times when there are good reasons for form to triumph over substance, but this is not one of them." (*Id.* at p. 1296.)

The court in *American Bankers* distinguished the cases in which the bond was deemed exonerated due to technical violations of the notice provisions on the ground that the bail agent "admits to having received a copy of the notice well within the 30 days allowed by the statute." (*People v. American Bankers Ins. Co., supra,* 227 Cal.App.3d at p. 1296, fn. omitted.) "In none of those cases [*People v. Wilshire Ins. Co., supra,* 46 Cal.App.3d 216; *People v. Earhart, supra,* 28 Cal.App.3d 840; *County of Los Angeles v. Resolute Ins. Co., supra,* 22 Cal.App.3d 961; *and People v. Surety Ins. Co., supra,* 158 Cal.App.3d Supp. 1] did the record indicate that, despite the defective mailing, both the surety and its agent received actual notice of the forfeiture." (*People v. American Bankers Ins. Co., supra,* at p. 1296, fn. 3.)

*American Bankers* was followed in *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379 [59 Cal.Rptr.2d 777], where the clerk sent notice of

forfeiture to the surety in accordance with the address on the bail bond, which was the address of a local agent who had been terminated. The surety had given the court notice of a change of address. The notice was received by the former agent who forwarded it to the surety. (*Id.* at p. 1381.) That forfeiture was set aside due to the defendant's reappearance. Defendant failed to appear a second time, and a second forfeiture was declared. Again, the notice went to the former agent. The surety did not receive the second notice. (*Id.* at p. 1382.) The court agreed with the court in *American Bankers* that the first notice was effective. "Because actual notice was received, although it was forwarded by [the former agent] to the surety, the statute's goal of effective notice was achieved in this instance. [Citation.]" (*Id.* at p. 1385.) Insofar as the second notice was concerned, however, the court concluded it was "an empty act, meaningless under the statute." (*Id.* at p. 1386.) "When the clerk of the court does not send the notice both to the surety and to the bail bondsman as required by the statute, the surety is exonerated from its obligations under the bond. Here the trial court had in its hands the actual information it needed in order to effectuate the purpose of the statute—to give actual notice to the surety of the forfeiture. It chose to ignore this information in favor of the address imprinted on the bond which belonged to the general agent, with whom the surety was no longer associated." (*Ibid.*)

Acknowledging that the clerk did not send notice of the April 6 forfeiture until July 1, the County maintains that American Contractors received actual notice because (1) it had written notice of the March 10 forfeiture and (2) it had knowledge that Kang failed to appear on April 6 since its agent located Kang in South Korea on or about April 8. It is hard to see how notice of the March 10 forfeiture could suffice for the purpose of giving notice of a forfeiture which occurred a month later since, as the court held in *People v. Wilshire Ins. Co., supra,* 46 Cal.App.3d 216, the surety and bail agent are entitled to separate notice under the statute every time a forfeiture is declared. The March 17 notice acted as notice of the purported March 10 forfeiture; separate notice of the April 6 forfeiture should have been sent within 30 days.

The other argument raised by the County is just another way of saying that the surety was not prejudiced by the failure to follow the notice provisions with regard to the April 6 forfeiture because the bail agent had taken steps to locate and retrieve the defendant within 180 days.[8] The problem with this line of reasoning is that nothing in the statute gives the courts permission to

---

[8]If the defendant appears or is brought into court within 180 days of the forfeiture, the forfeiture is automatically vacated. (§ 1305, subd. (c).) "If the notice of forfeiture is required

consider prejudice in deciding whether or not a bond will be exonerated for failure to meet a deadline. It should be emphasized that section 1305 does not simply specify how notice is to be effectuated and leave for development by the courts the consequences of failure to provide proper notice. If that were the case, we might have leeway to take into account the existence or nonexistence of actual notice or prejudice or other extenuating circumstances. Instead, section 1305 expressly states that the failure to mail notice of forfeiture in accordance with the statutory provisions within 30 days after the forfeiture "shall" result in the surety being "released of all obligations under the bond . . . ." (§ 1305, subd. (b).) The courts in *People v. American Bankers Ins. Co., supra,* 227 Cal.App.3d 1289 and *People v. Ranger Ins. Co., supra,* 51 Cal.App.4th 1379, were able to carve out a narrow exception because the clerk mailed the requisite notice to the specified parties within the 30-day jurisdictional period and it was delivered to the appropriate party within that same period through the fortuitous involvement of a third party. Here, no notice was mailed within 30 days of the April 6 order of forfeiture. The notice was not prepared until July 1, nearly two months after the statutory period for mailing notice expired, and the surety did not even learn about the April 6 forfeiture until June 10.

Deadlines set forth in the statutes governing bail bonds are considered jurisdictional and are strictly enforced in every other situation that has arisen in this area. (See, e.g., *County of Los Angeles v. National Automobile & Casualty Ins. Co.* (1998) 67 Cal.App.4th 271, 278 [79 Cal.Rptr.2d 5] [under former version of § 1305, order tolling the period within which the bond may be exonerated is void if requested during the requisite 180-day period but not entered until a few days after its expiration]; *County of Los Angeles v. American Bankers Ins. Co.* (1996) 44 Cal.App.4th 792, 797 [52 Cal.Rptr.2d 75] [because motion to vacate forfeiture was filed three days late, trial court lacked jurisdiction to continue the motion or to grant summary judgment motion filed within 90 days after the continued hearing date but more than 90 days from the last day to vacate forfeiture]; *People v. Topa Ins. Co.* (1995) 32 Cal.App.4th 296, 301 [38 Cal.Rptr.2d 167] [where last day to enter summary judgment was August 10, summary judgment entered on September 27 was in excess of the trial court's jurisdiction]; *People v. Wilshire Ins. Co.* (1975) 45 Cal.App.3d 814, 817-818 [119 Cal.Rptr. 702] [where last day to vacate forfeiture expired on October 30, court was without jurisdiction to exonerate the bond on November 24, the

---

to be mailed pursuant to this section, the 180-day period provided for in this section shall be extended by a period of five days to allow for the mailing." (§ 1305, subd. (b).) Apparently, an extradition treaty between the United States and South Korea exists, but has not yet been ratified, so Kang cannot be extradited.

date when the surety first presented evidence that the defendant had died]; *County of Los Angeles v. Surety Ins. Co., supra,* 162 Cal.App.3d at p. 63 [summary judgment void where entered two days late].) As the authorities make clear, the statutory deadlines in sections 1305 and 1306 are considered inviolable and do not depend on whether or not a party has suffered prejudice. No basis exists to depart from this well-established pattern by creating an exception when the clerk of the court fails to comply with the 30-day deadline for mailing notice of forfeiture set forth in section 1305.

## II

American Contractors additionally points out that if it is to be charged with actual notice dating from March 17 or April 6, the 180-day period in which to vacate forfeiture and exonerate the bond must have expired sometime in October at the latest. This means that summary judgment should have been entered by January 2000 in accordance with the 90-day deadline set forth in section 1306, subdivision (c). As we have seen, summary judgment was not entered until March 17, 2000. The County contends that although American Contractors had actual notice in March or April 1999, the running of the initial 180-day period and the subsequent 90-day period did not commence until July 1, when the clerk finally sent out the formal notice of the April 6 forfeiture pursuant to the court's June 10 order.

This dispute reveals why strict interpretation of the notice provisions is so critical to proper implementation of the statutes governing bail bonds. As we have discussed, mailing the notice of forfeiture causes the 180-day period within which the forfeiture can be vacated by defendant's reappearance to begin to run. Alternatively, the surety or bail agent can seek to have the period tolled (§ 1305, subd. (e)) or extended for an additional 180 days (§ 1305.4), but such motion must be made within the initial period and heard within 30 days of its expiration (§ 1305, subd. (i)). Once the initial period plus any tolling or extension period has run, the court has only 90 days to enter summary judgment on the bond. (§ 1306, subd. (c).) Failure to undertake the appropriate action within the requisite time period will result either in permanent forfeiture of the bond or loss of jurisdiction and exoneration of the bond. None of these deadlines are mutable, and a plea to the court for equity or fairness must necessarily fall on deaf ears. (See *People v. Wilshire Ins. Co., supra,* 45 Cal.App.3d at p. 818 [appellate court unmoved by surety's contention that refusal to exonerate bond where evidence that the defendant had died was presented a few weeks late represented "miscarriage of justice"].) Missing a deadline by just one day can mean the difference between forfeiture and exoneration of a multimillion-dollar bond.

If we were to throw into the mix a rule that extenuating circumstances can be taken into account when the clerk misses the 30-day window to mail notice of forfeiture—the date on which all the other deadlines depend—we would create confusion and ambiguity in an area where the Legislature and the courts have striven for decades to create clarity and uniformity. To illustrate, it has been argued at various times that American Contractors had notice on: (1) the day the premature notice went out; (2) the day American Contractors learned Kang was in South Korea; (3) June 10, 1999, the day American Contractors learned that forfeiture had been ordered; or (4) July 1, 1999, the day notice was finally mailed by the clerk per the court's order. Only if the latter date is used to calculate the initial 180 days can it be said that summary judgment was timely entered. But that date is far outside the 30-day window contemplated by section 1305, subdivision (b). Thus, the County would have the court use one of the earlier dates to establish notice for purposes of section 1305, subdivision (b), and the latter date to establish notice for purposes of section 1306, subdivision (c). In other words, the court should not make a finding as to the date of actual notice and use it for all purposes, but it should use different dates for notice at different stages of the proceeding depending on which date will result in forfeiture. That we will not do. The statutes governing bail bonds are fair because the deadlines are enforced strictly against both sides in an evenhanded manner, sometimes resulting in forfeiture and sometimes resulting in exoneration. Here the bond must be exonerated because even were we to agree that American Contractors had actual notice within the 30-day window, we would have to conclude that summary judgment was not timely entered within 90 days of the first opportunity. The County cannot have it both ways.

### Disposition

The trial court's order of July 29, 1999, deemed to be a denial of a motion to vacate the April 6, 1999, forfeiture and exonerate the bond is reversed. The order of June 21, 2000, setting aside summary judgment and exonerating the bond is affirmed. American Contractors is awarded its costs on appeal.

Vogel (C. S.), P. J., and Epstein, J., concurred.