[No. G035853. Fourth Dist., Div. Three. June 30, 2006.]

COUNTY OF ORANGE, Plaintiff and Respondent, v.
LEXINGTON NATIONAL INSURANCE CORPORATION, Defendant and
Appellant.

**Counsel**

Law Office of D. Kevin Dunn, D. Kevin Dunn and Karen D. Hill for Defendant and Appellant.

Benjamin P. de Mayo, County Counsel, and Leon J. Page, Deputy County Counsel, for Plaintiff and Respondent.

**Opinion**

**ARONSON, J.**—Lexington National Insurance Corporation (Lexington) appeals the trial court's denial of its motion to exonerate a bail bond and entry of summary judgment against it on forfeiture of the bond.[1] Lexington contends the statutory bail scheme imposes a mandatory duty on the trial court clerk to provide notice of a forfeiture and, when the clerk failed to send notice of an initial forfeiture declared when the bonded defendant missed an appearance, the trial court lost jurisdiction to declare a later forfeiture and enter summary judgment against Lexington. (See Pen. Code, § 1305; subsequent statutory references are to this code unless noted otherwise.) Alternatively, Lexington argues a bail agent it terminated had no authority to "reassume" the bond and therefore the trial court's reinstatement of the bond after the initial forfeiture was invalid, and reinstatement was also invalid absent notice from the court clerk. We agree the court clerk's failure to provide Lexington notice of the initial forfeiture constitutes jurisdictional error, and we therefore reverse and remand for entry of judgment exonerating the bond. Because Lexington's alternative arguments are moot, we do not address them.

I

FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2002, bail agent American Escape Bail Bonds (American Escape) and its surety, Lexington, executed a $100,000 bail bond to secure

---

[1] Courts have recognized both the order on motion to vacate and the ensuing entry of summary judgment as appealable. (*People v. American Contractors Indemnity Co.* (1999) 74 Cal.App.4th 1037, 1041 [88 Cal.Rptr.2d 572]; *County of Los Angeles v. Surety Ins. Co.* (1985) 164 Cal.App.3d 1221, 1225 [211 Cal.Rptr. 201].)

criminal defendant Hung Phi Nguyen's release from jail. Lexington signed a standard power of attorney form appointing American Escape as its attorney in fact. The power of attorney accompanied the bond when filed with the court clerk.

Two months later, on February 25, 2003, Lexington terminated its agency relationship with American Escape and sent notice of the termination to the Department of Insurance. (See Ins. Code, § 1802.1 [providing for a surety's appointment, and termination of appointment, of bail bond agents].)

On March 25, 2003, Nguyen failed to appear for his preliminary hearing. Consequently, the trial court declared a forfeiture in open court. The court clerk did not send notice of the forfeiture to Lexington.

Two days later, on March 27, 2003, Nguyen appeared for the rescheduled preliminary hearing and filed with the court a document entitled "Reassumption of Liability on Bail Bond," which stated: "The forfeiture of the Bail Bond filed herein on behalf of the above named defendant having been set aside by the above entitled Court, Lexington National Insurance Corporation, the surety thereon, does hereby reassume all of its obligations thereunder." (Capitalization modified.) American Escape signed the reassumption as Lexington's attorney in fact. The court ordered the bail forfeiture vacated and reinstated bail.

Over the next year, Nguyen appeared in court on 23 occasions. However, on March 12, 2004, he failed to appear for a pretrial hearing. The trial court declared a forfeiture and, on March 16, 2004, the court clerk mailed Lexington and American Escape notice of the forfeiture.

On September 28, 2004, on Lexington's motion, the trial court extended the forfeiture period an additional 180 days, to March 25, 2005. After its efforts to locate the defendant failed, Lexington changed tactics and moved for exoneration of the bond on the same grounds now raised on appeal. The court denied the motion and entered summary judgment against Lexington.

II

DISCUSSION

Lexington contends the trial court erred in denying its motion to exonerate the bond and in entering the resulting summary judgment. The abuse of discretion standard applies to the trial court's resolution of a motion to set aside a bail forfeiture (*People v. Legion Ins. Co.* (2002) 102 Cal.App.4th 1192, 1195 [126 Cal.Rptr.2d 172] (*Legion*)), subject to constraints imposed by the

bail statutory scheme. "[W]hen a statute requires a court to exercise its jurisdiction in a particular manner, to follow a particular procedure, or to act subject to certain limitations, an act beyond those limits is in excess of its jurisdiction." (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1384 [59 Cal.Rptr.2d 777] (*Ranger '96*).) " 'The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections . . . dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture.' [¶] The standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond." (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263] (*Surety Ins. Co.*).)

Section 1305 states in relevant part: "If the amount of the bond . . . exceeds four hundred dollars ($400), the clerk of the court *shall*, within 30 days of the forfeiture, mail notice of the forfeiture to the surety . . . ." (*Id.,* subd. (b), italics added.) Subdivision (b) further provides that "[t]he surety . . . *shall* be released of all obligations under the bond if any of the following conditions apply: [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture. [¶] (2) The clerk fails to mail the notice of forfeiture to the surety at the address printed on the bond. [¶] (3) The clerk fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond." (*Ibid.,* italics added.)

■ The statute has two related objectives: to provide for a reasonably effective means of notice, and to create a reasonably reliable record of that notice. (*People v. American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289, 1295 [278 Cal.Rptr. 314] (*American Bankers*), overruled on another point in *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120 [97 Cal.Rptr.2d 858].) The purpose of notice is to alert "the surety when its bond is in danger of being forfeited, so it can choose to act one way or another." (*Ranger '96, supra,* 51 Cal.App.4th at p. 1386.) The statute places the burden of mailing notice of forfeiture on the only neutral party involved, the court itself. (*Id.* at p. 1385.)

Section 1305, along with section 1306,[2] are said to be "jurisdictional prescriptions." (*County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10, 16 [82 Cal.Rptr.2d 214] (*Ranger '99*).) Section 1305 is jurisdictional in the sense it sets forth certain "prerequisites before a court can order forfeiture of bail." (*People v. National Automobile & Casualty Ins. Co.*

---

[2] Section 1306 generally provides that when a bond is forfeited and 180 days have passed, the court may enter summary judgment against the bondsman for the amount of the bond.

(2004) 121 Cal.App.4th 1441, 1447 [18 Cal.Rptr.3d 357].) "Failure to follow the jurisdictional prescriptions in sections 1305 and 1306 renders a summary judgment on the bail bond void." (*Ranger '99, supra,* 70 Cal.App.4th at p. 16; see also *Ranger '96, supra,* 51 Cal.App.4th at p. 1385 ["jurisdiction-defeating mistake[s] . . . can be raised at any time, including for the first time on appeal"].)

■ The surety and bail agent are entitled to separate notice under the statute every time a forfeiture is declared. (*People v. American Contractors Indemnity Co.* (2001) 91 Cal.App.4th 799, 808 [110 Cal.Rptr.2d 799] (*American Contractors*).) "When the clerk of the court does not send the notice both to the surety and to the bail bondsman as required by the statute, the surety is exonerated from its obligations under the bond." (*Ranger '96, supra,* 51 Cal.App.4th at pp. 1385–1386 ["Other cases, and the statute itself, make abundantly clear that notice must be sent both to the surety and to the bail agent"]; see also *County of Los Angeles v. Resolute Ins. Co.* (1972) 22 Cal.App.3d 961 [99 Cal.Rptr. 743] [summary judgment held void since surety's bond had been released as a matter of law for lack of prescribed notice].)

Because "the statute's goal [is] effective notice" (*Ranger '96, supra,* 51 Cal.App.4th at p. 1385), when the surety receives actual notice despite a technical mistake by the court clerk, forfeiture of the bond will stand if neither the surety nor bondsman produces the defendant. (*Ibid.* [notice of first forfeiture effective when former bail agent forwarded it to surety, but exoneration required because clerk, who knew surety's new address, nevertheless sent notice of a second forfeiture to same former agent and it was not forwarded]; see also *American Bankers, supra,* 227 Cal.App.3d at p. 1295 [no exoneration where clerk inadvertently placed notice in envelope addressed to a different bail bondsman, but that bondsman forwarded it to the proper agent].) Here, it is undisputed the court clerk failed to mail Lexington notice of the March 25, 2003 forfeiture and that Lexington never otherwise received actual notice. We therefore agree with Lexington the trial court abused its discretion by failing to exonerate the bond. (See § 1305, subd. (b) ["The surety . . . *shall* be released of all obligations under the bond if any of the following conditions apply: [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture" (italics added)].)

Resisting this conclusion, the county argues the purpose of a bail bond is simply to assure the defendant's appearance and, when the court has vacated a forfeiture upon the defendant's reappearance, the clerk's failure to send notice is no reason "for bail agents and sureties to evade their contractual obligations." But this narrow perspective overlooks the interests of those

insuring the defendant's reappearance. Notice pursuant to section 1305 enables the surety to decide whether to continue to risk funds on a defendant who has failed to appear. (See *Ranger '96, supra,* 51 Cal.App.4th at p. 1386 [knowing "its bond is in danger of being forfeited, [the surety] can choose to act one way or another"].) As the county acknowledges, at any time before the second forfeiture, Lexington "could have, itself, surrendered [d]efendant to custody prior to the declaration of forfeiture and could have obtained an exoneration of bail, as a matter of right, pursuant to [s]ection 1300[, subdivision] (a)."[3] But absent notice, a surety has no reason to do so. Consequently, we find the county's construction of the statute unpersuasive.

■ On a related tack, the county contends that when the court vacated the forfeiture, "there was no pending forfeiture" requiring notice. But the literal terms of the statute mandate notice of "the forfeiture," whether or not it is pending. (§ 1305, subd. (b) ["the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety"].) The statute manifestly does not say notice is required only for forfeitures unvacated within 30 days. (See *Surety Ins. Co., supra,* 162 Cal.App.3d at p. 62 ["It is well established in the case law that Penal Code sections 1305 and 1306 are subject to precise and strict construction"].) The county's argument is thus without merit.

■ The county raises the ominous tone of the court's forfeiture notices as a reason not to provide notice at all when a forfeiture has been vacated. According to the county, "the notice of forfeiture used by the Orange County Superior Court states: 'If the forfeiture is not discharged by the Court, the Court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound . . . .' " The county argues "it is simply not accurate for the Court Clerk to be informing the bail agent and surety on the bond that the Court 'shall enter a summary judgment against each bondsman named in the bond.' " First, the county cannot interpose the particular terms of notice chosen by a superior court to defeat the Legislature's notice mandate. Second and more to the point, there is nothing inaccurate in the court's chosen terms of notice: once the surety investigates the notice of forfeiture, it will discover whether the forfeiture has been discharged and, if it has, no summary judgment will ensue.

The county next cites cases purportedly supporting the proposition that, with notice to the bail agent alone, "the statute's goal of effective notice was

---

[3] Section 1300, subdivision (a), provides: "At any time before the forfeiture of their undertaking, or *deposit by a third person,* the bail or the depositor may surrender the defendant in their exoneration, or he may surrender himself, to the officer to whose custody he was committed at the time of giving bail . . . ."

achieved and exoneration of bail is not required." (see *Legion, supra,* 102 Cal.App.4th 1192; *Ranger '96, supra,* 51 Cal.App.4th 1379; *American Bankers, supra,* 227 Cal.App.3d 1289.) But in *Legion,* both the bail agent and surety received notice (*Legion, supra,* 102 Cal.App.4th at p. 1198) and the only question was whether misidentification of the bond number warranted exoneration. And in *Ranger* and *American Bankers,* the notices to a former bail agent and the wrong bail agent, respectively, were effective only because they were forwarded to the surety, which did not occur here. (See *Ranger '96,* supra, at p. 1385; *American Bankers, supra,* at p. 1295.) In sum, these cases cannot be deployed as the county wishes. (See *People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372] [opinions are not authority for propositions not considered].) Indeed, to the contrary, the *Ranger* court expressly noted: "Other cases, and the statute itself, make abundantly clear that notice must be sent *both* to the surety and to the bail agent." (*Ranger '96,* supra, at p. 1385, italics added; see, e.g., *American Contractors, supra,* 91 Cal.App.4th at p. 808.)

The county's reliance on *People v. Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51 [164 Cal.Rptr. 159] (*Amwest*) is also unavailing. The court described the pertinent circumstances: "[T]here was a prior . . . order of forfeiture when the defendant was late for his first appearance in the superior court on December 19, 1978. He was due at 9 a.m. The case was again called; it was determined that defendant had been 30 minutes late because his trip to court required him to catch three buses and he had somehow miscalculated as to the time required; the court thereupon vacated the order forfeiting bail and ordered the bail reinstated. It is the contention of the appellant that liability on the bond was precluded as a matter of law exactly 30 days thereafter pursuant to section 1305 of the Penal Code; that for all practical purposes, defendant . . . was on his own recognizance from and after January 19th in that no proceedings affecting the bail could take place thereafter." (*Id.* at p. 53.) In these circumstances, the *Amwest* court rejected exoneration.

To the extent *Amwest* turns on the implicit conclusion the trial court abused its discretion in declaring a forfeiture because "the appearance of the defendant one-half hour after the time appointed was excused" (*Amwest, supra,* 105 Cal.App.3d at p. 56), it may be defensible. (See § 1305, subd. (a) [forfeiture warranted only if defendant fails to appear at specified hearings "without sufficient excuse"].) But we do not agree that when a forfeiture has been declared, "notification as to the prior lateness would have served no purpose . . . ." (*Amwest, supra,* 105 Cal.App.3d at p. 56.) As discussed, the purpose of notice is to alert the surety of the danger to its bond, "so it can choose to act one way or another." (*Ranger '96, supra,* 51 Cal.App.4th at p. 1386.) On this ground, we decline to follow *Amwest.*

*Amwest* criticized *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 [119 Cal.Rptr. 917] (*Wilshire*), but we find the latter case directly on point and persuasive. There, the defendant failed to appear for arraignment and the trial court ordered the surety's bond forfeited. The next day, the defendant appeared, satisfactorily explained his absence, and the court set aside the forfeiture and reinstated bail. The court clerk mailed no notice to the surety of the forfeiture or reinstatement. Subsequently, the defendant failed to appear again, and the court declared a forfeiture. Notice was properly given of the second forfeiture, and the trial court entered summary judgment against the surety. The surety appealed, contending lack of notice of the initial forfeiture exonerated the bond. The appellate court agreed: "[W]e perceive no escape from the conclusion that the failure to give the notice of the forfeiture invalidated the bond and rendered the judgment based thereon void." (*Id.* at p. 221.) As noted, *Amwest* discerned "no purpose" in this holding (*Amwest, supra,* 105 Cal.App.3d at p. 56), apparently overlooking the *Wilshire* court's explanation: "The real point is that by the failure to receive notice the surety was deprived of the opportunity to consider all factors potentially producing an increased risk, which opportunity the statute apparently intended to assure." (*Wilshire, supra,* at p. 220, fn. 1.) We agree with *Wilshire's* interpretation of section 1305.

Finally, the county argues the trial court did not abuse its discretion by reinstating the bond because, in failing to notify the trial court or the county clerk it terminated its relationship with the bail agent, Lexington left the agent with an unrevoked power of attorney and ostensible authority to reassume the bond.[4] Additionally, the county argues the trial court committed no abuse of discretion in giving notice of *reinstatement* only to the bail agent and not to Lexington. (See *People v. Ranger Ins. Co.* (2003) 110 Cal.App.4th

---

[4] In support of its position, the county has submitted additional authority on the eve of oral argument, directing our attention to section 1276, which provides in part: "A bail bond or undertaking of bail of an admitted surety insurer shall be accepted or approved by a court or magistrate without further acknowledgment if executed by a licensed bail agent *of the insurer* under penalty of perjury and issued in the name of the insurer by a person authorized to do so *by an unrevoked power of attorney on file in the office of the clerk of the county in which the court or magistrate is located.*" (*Id.,* subd. (a), italics added.) The county argues the reference to "an unrevoked power of attorney" on file with the county clerk applies to the power of attorney American Escape filed with the court clerk on the trial court's initial acceptance of the bond. On the other hand, Lexington notified the insurance commissioner of its termination of the bail agent's appointment (Ins. Code, § 1802.1) and so American Escape does not appear to be a "licensed bail agent of the insurer." Lexington also argues it was the commissioner's responsibility to "notify every county clerk in the state of a change in a bail agent's license status," even though the terms of the applicable statute impose this duty in reference to termination of a bail agent's *license,* not his or her appointment. (See Ins. Code, § 1815 [providing that commissioner "shall promptly upon termination, for any cause, of such license, notify the respective county clerks"].) As we discuss below, we need not resolve these issues because they are moot.

729, 735 [1 Cal.Rptr.3d 875].) These arguments are beside the point, since reinstatement of the bond does not remedy the failure to give the required notice of forfeiture. Simply put, absent notice within the required period, the trial court lost jurisdiction to enter summary judgment on the bond. (See, e.g., *Ranger '99, supra,* 70 Cal.App.4th at p. 16 [failure to follow section 1305's jurisdictional prescriptions renders summary judgment void].)

## III

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for entry of an order exonerating the bond. Lexington is entitled to its costs on appeal. (Cal. Rules of Court, rule 27.)

Sills, P. J., and Rylaarsdam, J., concurred.