Filed 2/8/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br><br>INTERNATIONAL FIDELITY<br>INSURANCE COMPANY,<br><br>      Defendant and Appellant. | A145993<br><br>(San Mateo County<br>Super. Ct. No. CIV533582) |

When a convicted defendant who had been released on bail failed to appear for sentencing, the trial court ordered bail forfeited and entered a summary judgment against the surety, International Fidelity Insurance Company.  The surety appeals from the denial of its motion to discharge the order of forfeiture, set aside the summary judgment and exonerate bail, arguing that county counsel lacked standing to object to the surety's request for tolling of the time period to secure the defendant's appearance, the trial court should be authorized to toll that period in the circumstances presented by this case, and the court lacked jurisdiction to declare the forfeiture of bail prior to the time the defendant had been ordered to appear.  Although we disagree with the first two of these arguments, the third requires us to reverse the judgment.

**STATEMENT OF THE CASE AND FACTS**

On November 19, 2013, Horacio Carlos Teran (defendant) was found guilty of three counts of lewd or lascivious acts against a child under the age of 14 years (Pen. Code, § 288, subd. (a)).[1]  The defendant was remanded to custody with bail increased to

_____

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

1

$300,000, the matter was continued to 10:00 a.m. on January 24, 2014, for sentencing, and the defendant was ordered to appear "on that date." On November 22, 2013, Metro One Bail Bonds, Inc. (Metro One), as agent for International Fidelity Insurance Company (International Fidelity), posted a bail bond in the amount of $300,000. The bail bond face sheet and jail receipt state the date and time for the defendant's appearance as 10:00 a.m. on January 24, 2014.

On January 21, 2014, the court re-set the sentencing hearing for 9:00 a.m. on January 24, 2014.

On January 24, 2014, when the hearing began at 9:18 a.m., attorney Mike Armstrong requested permission to substitute in for the defendant's attorney of record, Patrick Clancy. The defendant was not present. The prosecutor asked the court to order a no-bail warrant and when the court asked where the defendant was, Armstrong said he did not know. Armstrong explained that after being convicted, the defendant asked him to replace Clancy for sentencing and Armstrong agreed, but before he could have the substitution of attorney prepared for the defendant to sign, the defendant "disappeared."[2] He further stated that the defendant's wife had reported him as a missing person in December, and that on the date scheduled for the defendant's probation hearing, Armstrong had called the probation officer and said he had no idea where the defendant was. Armstrong told the court he understood the prosecutor's request and submitted. The court ordered bail forfeited and no bail set, and denied the substitution motion. On February 10, 2014, a bench warrant issued and notice of the order forfeiting bail was filed and mailed to International Fidelity and Metro One. The notice informed the surety that it had 185 days to seek relief from forfeiture in accordance with sections 1305 and 1306.

On August 7, 2014, the court granted Metro One's motion to extend the time for relief from forfeiture until February 10, 2015.[3]

---

[2] Armstrong had represented the defendant in an initial trial that resulted in a hung jury, after which Clancy handled the retrial.

[3] The motion is not included in the record on appeal and the trial court's register of actions refers to both a motion to extend time and a motion to toll time. We presume the

On February 9, 2015, International Fidelity filed the motion to toll time at issue in the present appeal. International Fidelity stated that it had tracked the defendant to Mexico and provided information from its investigation to law enforcement authorities; that extradition was being pursued; that it was requesting tolling of the statutory deadline to produce the defendant "in order to continue its efforts to monitor the defendant's location while law enforcement authorities continue their extradition efforts"; and that the district attorney's office had indicated it would agree to tolling. The motion was opposed by county counsel on the ground that International Fidelity had not met all the requirements of the governing statute, section 1305, subdivision (h). That statute allows the prosecutor and bail agent, in "cases arising under subdivision (g)," to agree to toll the time period within which the surety can obtain discharge of the bail forfeiture and exoneration of the bond because additional time is needed "to return the defendant to the jurisdiction of the court." Subdivision (g) provides for exoneration of a bail bond where a defendant who is outside the jurisdiction of the court and not in custody is "temporarily detained by the bail agent" and positively identified by a local law enforcement officer and the prosecutor elects not to seek extradition. County counsel argued that International Fidelity had not shown compliance with the requirements of subdivision (g), and therefore subdivision (h) did not apply.

At a hearing on April 23, 2015, the deputy district attorney stated that she wanted the defendant found and that her office was willing to work on extradition, but that this was "not [her] area of the law," she did not research the issue because it was "between County Counsel and the bail company" and she deferred to county counsel on the legal issues. The prosecutor told the court she had worked with the Department of Justice on the paperwork for an Unlawful Flight to Avoid Prosecution (UFAP) warrant, was still

extension was sought and granted under section 1305.4, which allows the trial court to order the initial 180-day period (plus five days for mailed notice of forfeiture) extended to a time "not exceeding 180 days from its order" on a showing of good cause.

sorting through additional extradition paperwork she had been given, and had not made "any formal agreement" with the bail agency.

The trial court denied the motion to toll time on the ground that section 1305, subdivision (h), did not apply. On April 29, the court filed its order granting summary judgment against International Fidelity and in favor of the People of the State of California in the amount of $300,000, pursuant to section 1306.

International Fidelity filed a motion to set aside the summary judgment, vacate forfeiture and exonerate bail, on the grounds that the court lacked jurisdiction to declare a forfeiture before 10:00 a.m. on January 24, 2014, the time the defendant had been ordered to appear, and that the summary judgment was entered prematurely. The motion was opposed by county counsel and denied after a hearing on August 7, 2015.

International Fidelity filed a timely notice of appeal on August 14, 2015.

## DISCUSSION

"The forfeiture of bail and related proceedings are a matter of statutory procedure governed by sections 1305 through 1308." (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 709 (*Safety National*).) "When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (Pen. Code, § 1305, subd. (a).) The surety that posted the bond then has a statutory 'appearance' period in which either to produce the accused in court and have the forfeiture set aside, or to demonstrate other circumstances requiring the court to vacate the forfeiture. If the forfeiture is not set aside by the end of the appearance period, the court is required to enter summary judgment against the surety. (§ 1306, subd. (a).)" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657, fn. omitted.)

" ' "Certain fixed legal principles guide us in the construction of bail statutes. The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citation.] Thus, [the bail forfeiture statutes] must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture. [Citation.]" ' (*People v. Ranger Ins. Co.* (2000) 77 Cal.App.4th 813, 816. . . .) 'The standard of review, therefore, compels us to

4

protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond.' (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62.)" (*People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1044.) "The provisions of section 1305 'must be strictly followed or the court acts without or in excess of its jurisdiction. [Citation.]' (*People v. American Bankers Ins. Co.* [(1992)] 4 Cal.App.4th [348,] 354.) 'The burden is upon the bonding company seeking to set aside the forfeiture to establish by competent evidence that its case falls within the four corners of these statutory requirements.' (*Ibid.;* accord, *County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018, 1027.)" (*People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 152.)

" 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' (*People v. Wilcox* (1960) 53 Cal.2d 651, 656–657.) 'While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature.' (*People v. American Contractors Indemnity Co.*[, *supra,*] 33 Cal.4th [at p.] 657.) In that regard, the bail bond itself is a ' "contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond." ' (*Ibid.*) When a defendant who posts bail fails to appear at a scheduled hearing, the forfeiture of bail implicates not just the defendant's required presence, but constitutes a 'breach of this contract' between the surety and the government. (*Id.* at pp. 657–658.) Ultimately, if the defendant's nonappearance is without sufficient excuse, it is the surety who 'must suffer the consequences.' (*People v. Allen* (1994) 28 Cal.App.4th 575, 580.)" (*Safety National*, *supra*, 62 Cal.4th at p. 709.)

## I.

International Fidelity's motion to toll the appearance period was brought under section 1305, subdivision (h). That statute provides: "In cases arising under subdivision (g), if the bail agent and the *prosecuting agency* agree that additional time is needed to return the defendant to the jurisdiction of the court, and the prosecuting agency agrees to

5

the tolling of the 180-day period, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the forfeiture.  The court may order tolling for up to the length of time agreed upon by the parties." (Italics added.)  Here, it was county counsel, not the district attorney, who objected to the request for tolling.  International Fidelity argues county counsel had no standing to do so because it was not the "prosecuting agency" within the meaning of section 1305.

Pursuant to Government Code section 27642, "[w]henever the board of supervisors appoints a county counsel pursuant to this chapter, he shall discharge all the duties vested by law in the district attorney *other than those of a public prosecutor*." (Italics added.)  Under Government Code section 26521, "[t]he district attorney shall defend all suits brought against the state in his or her county or against his or her county wherever brought, and prosecute all recognizances forfeited in the courts of record and, *except as provided in Sections 1305 and 1306* of the Penal Code, prosecute all actions for the recovery of debts, fines, penalties, and forfeitures accruing to the state or his or her county." (Italics added.)

*County of San Bernardino v. Ranger Ins. Company* (1995) 34 Cal.App.4th 1140 (*Ranger*), held that county counsel, rather than the district attorney, was the proper counsel to represent the county with respect to a surety's appeal from the trial court's denial of a motion to set aside a summary judgment on a forfeiture and exonerate the bond.  The non-appearing defendant had been arrested by the surety's agents after notice of bail forfeiture was sent to the parties, after which he had entered a guilty plea and been sentenced.  *Ranger* held that county counsel was the proper attorney with regard to the appeal because the underlying criminal prosecution had concluded and "[t]he sole remaining proceedings were the summary judgment—seeking civil collection of the forfeited bail—and Ranger's motion to set aside the summary judgment and exonerate bail." (*Id.* at p. 1145.)

*Ranger* distinguished *People v. Hadley* (1967) 257 Cal.App.2d Supp. 871 (*Hadley*), which had held the district attorney was the proper attorney to represent the People where bail was forfeited by the defendant's failure to appear and the prosecution

6

remained pending. *Ranger* quoted *Hadley's* explanation:  " 'Section 26521 of the Government Code provides that the district attorney shall prosecute all actions regarding fines, penalties and forfeitures.  Section 2762[4] of the same code provides that the county counsel shall discharge all duties of the district attorney except those of public prosecution.  It seems clear that the existence of bail and its influence to ensure the presence of the defendant is inextricably a part of the prosecution process, and thus becomes the concern of the district attorney. . . .  *When, however*, the state or the county require legal representation *for the collection of an obligation created by a bail bond, such a proceeding is wholly unrelated to the prosecution procedure and should be accomplished by the county counsel's office.'*  ([*Hadley*, at pp.] 878-879, italics added.)  'It seems, therefore, the practical and rational concept that the district attorney should be charged with all matters relating to bail *up to the point where a civil suit is to be instituted.*'  (*Id.* at p. Supp. 879, italics added.)"  (*Ranger, supra,* 34 Cal.App.4th at p. 1145.)  *Ranger* concluded that county counsel was the proper attorney for the county "as the underlying prosecution was concluded and, even according to *Hadley*, the proceedings had ceased to be prosecutorial in nature but were solely civil proceedings to recover the forfeited bail."  (*Id.* at p. 1146.)

The *Ranger* court also noted that its conclusion was supported by statutory amendments since *Hadley* was decided.  (*Ranger, supra,* 34 Cal.App.4th at p. 1145.)  Government Code section 26521 had been amended in 1990 to provide that the district attorney was to prosecute forfeited recognizances "except as provided in Section 1305 and 1306 of the Penal Code"; section 1305, which had previously required notice of motions regarding discharge of a forfeiture to "the district attorney" had been amended to require notice to "the district attorney, other prosecuting attorney or county counsel, as

---

    [4] The citation to Government Code "2762" is apparently an error.  No Government Code section 2762 exists or existed when *Ranger* and *Hadley* were decided, but the provision described appears in Government Code section 27642.

the case may be";[5] and section 1306 had been amended to identify county counsel as one of the entities directed to enforce a summary judgment of forfeiture.[6] (*Ranger*, at pp. 1145-1146; Stats. 1990, ch. 1073, §§ 2, 3.) Those 1990 amendments were in effect at the time of the trial court proceedings in *Ranger*.

According to legislative analyses, the purpose of the 1990 amendment of section 1305 to add explicit reference to "county counsel" was to "assure that counties are represented in bail forfeiture proceedings," and the bill would, among other things, "[p]rovide that county counsel must also be given notice and opportunity to represent the state in opposition to motions to vacate the forfeiture of bail."[7] (Com. Off. Of Sen. Floor

---

[5] As amended in 1990, "section 1305 provided that, '[u]nless waived by the district attorney, other prosecuting attorney, *or county counsel*, as the case may be, no order discharging the forfeiture of the undertaking or deposit shall be made without notice by the bail to the district attorney, prosecuting attorney, *or county counsel*, as specified by the board of supervisors after consultation with the county counsel and the district attorney, who may request a hearing within 10 days after receipt of the notice. The notice may be given by the surety insurer, its bail agent, the surety, or the depositor of money . . . . The court shall then set the date, time, and place of hearing and give notice to the district attorney, prosecuting attorney, *and county counsel* and to the bail. The district attorney, prosecuting attorney, *or county counsel*, as the case may be, shall recover the costs incurred in successfully opposing a motion to discharge the forfeiture . . . from the forfeited bail money.' (Stats. 1990, ch. 1073, § 2, italics added.)" (*Ranger, supra,* 34 Cal.App.4th at p. 1146.)

[6] Prior to the 1990 amendment, section 1306 directed the district attorney "or civil legal adviser of the board of supervisors" to enforce a judgment of forfeiture. (See Stats. 1987, ch. 1303, § 2.) The 1990 amendments replaced "civil legal advisor of the board of supervisors" with "county counsel." (Stats. 1990, ch. 1073, § 3.)" (*Ranger, supra,* 34 Cal.App.4th at p. 1146.)

[7] This analysis explained that "the fundamental problem is that there is no representation for the state on motions to vacate bail forfeitures" because "in the majority of counties . . . staff shortages make it impossible to respond to these motions. The direct result is that motions are frequently granted because no relevant evidence has been presented in opposition to the motion. . . . As a further direct result, it is estimated that most counties and their cities lose between $250,000 to $500,000 each year in monies that would otherwise go to their general funds." (Com. Off. Of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3914 (1989-1990 Reg. Sess.) as amended Aug. 10, 1990, p. 3.)

8

Analyses, 3d reading analysis of Assem. Bill No. 3914 (1989-1990 Reg. Sess.) as amended Aug. 10, 1990, p. 2.) The Report of the Assembly Committee on Public Safety, New Statutes Affecting the Criminal Law (1990 Gen. and Extra. Sess.) at page 34, stated that the new bill "allows a board of supervisors to decide whether the DA, prosecuting attorney, or county counsel shall be given notice by the bail and represent the state in opposition to motions to vacate the forfeiture of bail." (Assem. Com. on Public Safety, Concurrence in Sen. Amends. to Assem. Bill No. 3914 (1989-1990 Reg. Sess.) as amended Aug. 10, 1990, p. 1.)

As appellant emphasizes, the current version of section 1305 does not refer expressly to "county counsel." In 1993, section 1305 was repealed and a new section 1305 adopted. (Stats. 1993, ch. 524, §§ 1, 2.) Where the statute had previously referred to notice to "the district attorney, prosecuting attorney, or county counsel," the statute adopted in 1993 referred to notice "to the applicable prosecuting agency." (*Id.*, § 2.) The current bail statutes refer to "county counsel" only in section 1305.3, providing for recovery of costs and attorney fees incurred in opposing a motion to vacate forfeiture and in collecting on a judgment of forfeiture, and section 1306, subdivision (e), concerning enforcement of judgments against a surety. International Fidelity takes this change to mean that county counsel is no longer entitled to notice of bail forfeiture proceedings and may not participate in such proceedings until after any motions to vacate forfeiture or extend the appearance period have been determined and the judgment has become final. In other words, International Fidelity maintains that county counsel may properly act to enforce a final judgment but may not defend a forfeiture against sureties' attempts to discharge it or vacate the ensuing judgment.[8]

We find this interpretation untenable. While we agree with International Fidelity that county counsel is not the "prosecuting agency" within the meaning of the bail

---

[8] The judgment becomes final 60 days after the clerk mails notice of entry of judgment. (*People v. American Contractors Indemnity Co.*, *supra*, 238 Cal.App.4th at p. 1047.)

statutes, those statutes nevertheless contemplate that counsel will represent the People in forfeiture proceedings in at least some cases.

As International Fidelity maintains, the bail statutes require notice of hearings on motions to extend or toll the 180-day appearance period, or to vacate a forfeiture, only to the "prosecuting agency." (§§ 1305, subds. (f), (g), (k), 1305.4, 1305.6.) We agree with International Fidelity that the term "prosecuting agency" must have a consistent meaning throughout the bail statutes. We further agree that the intended meaning of the term is the agency prosecuting the defendant in the underlying criminal case. This is apparent from the way the term is used in the statutes. Section 1305, subdivisions (f) and (g), provide for exoneration of the bond where the defendant is outside the court's jurisdiction "and the prosecuting agency elects not to seek extradition"; clearly the "prosecuting agency" must be the agency prosecuting the underlying criminal case, as only that agency could make decisions on whether to pursue extradition. Other provisions referring to the "prosecuting agency" similarly address situations in which the underlying criminal prosecution will be affected: Subdivision (h) of section 1305 allows for tolling of the 180-day period upon agreement between the bail agency and the "prosecuting agency"; subdivision (k) requires notice to the "prosecuting agency" as a condition precedent to granting a motion under subdivisions (f), (g) or (j) (which permits extension of the time for hearing motions filed within the 180-day period); section 1305.4 requires notice to the "prosecuting agency" as a condition precedent to granting a motion to extend the 180-day appearance period; and section 1305.6 requires notice to the "prosecuting agency" before a hearing on a motion to vacate forfeiture when a defendant appears after the end of the 180-day period. By contrast, where "prosecuting agency" appears in a provision that does not implicate the underlying criminal prosecution, it is to describe one of several agencies: The "district attorney, county counsel, or applicable prosecuting agency" is entitled to recover costs and attorney fees incurred in successfully opposing a motion to vacate a forfeiture and in collecting on a judgment. (§ 1305.3.) The statutes thus treat "prosecuting agency" and "county counsel" as separate entities.

10

But the bail statutes clearly contemplate a potential role for county counsel in litigation concerning bail forfeiture.  First, nothing in the legislative history of the 1993 repeal and reenactment of section 1305 indicates an intent to eliminate the role of county counsel in forfeiture proceedings, which had been expressly included in the statute only three years earlier.  The bill was described as primarily aimed at clarifying the provisions of section 1305 because the statute had been amended many times, resulting in "conflicting interpretations of some provisions and confusion on the part of many who must implement it."  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 734 (1993-1994 Reg. Sess.) as amended April 29, 1993; Sen. Floor Analysis of Assem. Bill. No. 734 (1993-1994 Reg. Sess.) Aug. 18, 1993 ["bill generally recasts the provisions relating to forfeiture of bail in a more readable form"].)  The analyses referred to a few areas of substantive change, none of which indicated any change in county counsel's involvement in the forfeiture process.[9]

Second, section 1305.3 provides that the "district attorney, county counsel, or applicable prosecuting agency, as the case may be, shall recover, out of the forfeited bail money, the costs and attorney's fees *incurred in successfully opposing a motion to vacate the forfeiture* and in collecting on the summary judgment prior to the division of the forfeited bail money between the cities and counties in accordance with Section 1463.001."  (Italics added.)  As first enacted in 1993, section 1305.3 provided that the "applicable prosecuting agency shall recover, out of the forfeited bail money, the costs incurred in successfully opposing a motion to vacate the forfeiture prior to the

---

[9] The "main substantive portion" of the bill was described as "extend[ing] the time during which a surety may appear in court with a motion to vacate the forfeiture." (Assem. Com. on Public Safety Analysis of Assem. Bill No. 734 (1993-1994 Reg. Sess.) as amended Apr. 29, 1993.)  A subsequent analysis referred to other substantive changes, including raising the threshold dollar amount at which notice of forfeiture must be provided, and stated, "the purpose of this measure is to clarify the convoluted prose of existing law pertaining to bail forfeitures, to make adjustments in notice requirements and appearance deadlines in the interests of fairness and efficiency, and to provide bail sureties with the opportunity to avoid forfeiture in vehicle violation cases."  (Sen. Com. on Judiciary Analysis of Assem. Bill No. 734 (1993-1994 Reg. Sess.).)

division of the forfeited bail money between the cities and counties in accordance with Section 1463." The statute was amended in 1994 to add the references in the current statute to "district attorney" and "county counsel," as well as to "collecting on the summary judgment." (Stats. 1994, ch. 170, § 1.) As described in a report for the Assembly Committee on Public Safety, the "purpose of this bill [was] to clarify that the county counsel can recover funds expended in collecting forfeited bail money." (Assem. Com. on Public Safety Rep. on Rep. on Sen. Bill No. 1649 (1993-1994 Reg. Sess.) as amended April 19, 1994.) The need for clarification was described as having been recognized when a county which tasked county counsel, rather than the district attorney, with handling motions to vacate forfeiture found it was unable to recover costs because county counsel is not considered a "prosecuting attorney." (*Ibid.*)[10]

The language of section 1305.3 and its legislative history demonstrate the Legislature's recognition that counties may choose to designate county counsel as the agency to litigate matters arising after a trial court has declared a forfeiture of bail, including motions to vacate the forfeiture. In such cases, county counsel would properly appear in the trial court proceeding despite the fact that, as here, the criminal proceeding had not yet concluded because the defendant has not been returned to court. In this regard, we take judicial notice of San Mateo County Ordinance 2.14.050, which provides:

---

[10] The report described the "need" for the bill as follows: "Need. Last year AB 734 (Johnson, ch. 524) added Penal Code section 1305.3, which provides that 'the applicable prosecuting attorney' shall recover the cost of successfully opposing a motion to vacate forfeiture. Thus the bail money recovered is first used to pay the prosecuting agency's costs, and the remainder is distributed as provided for by statute. Prior to enactment of AB 734, the costs were recovered only after disbursement of the moneys. [¶] The sponsor of this bill, Napa County, has found that they cannot recover costs pursuant to this section because the County Counsel is responsible for filing the motions to vacate forfeiture, and the County Counsel is not considered to be a "prosecuting attorney." This bill will allow Napa County, and any other county which uses the Office of the County Counsel to file these motions, to recover their costs in the same manner as counties who use the Office of the District Attorney to file the motions." (Assem. Com. on Public Safety Rep. on Rep. on Sen. Bill No. 1649 (1993-1994 Reg. Sess.) as amended Apr. 19, 1994.)

12

"Pursuant to Penal Code section 1305, the County Counsel is hereby designated as the County officer upon whom notice in any matter related to bail forfeiture must be served." (San Mateo County Code of Ordinances (Supp. No. 29, 1-17) tit. 2, art. 2.1, ch. 2.14.)

International Fidelity maintains that section 1305.3 does not grant county counsel "separate standing to respond to motions to vacate but merely allows the District Attorney or County Counsel to recover costs, not attorney fees, out of forfeited bail monies." *People v. United States Fire Ins. Co.* (2012) 210 Cal.App.4th 1423, 1426, which is cited in support of this proposition, upheld the trial court's denial of a motion for attorney fees because section 1305.3 at that time provided only for recovery of "costs." The statute was subsequently amended to expressly permit recovery of "costs and attorney's fees." (Stats. 2016, ch. 378, § 1.) Of particular significance here, *United States Fire Ins. Co.,* at page 1425, described the People as having been represented by *county counsel* in the proceedings that resulted in forfeiture of bail. The case thus undermines the surety's point, as it affirmed trial court orders granting county counsel its costs in successfully obtaining bail forfeitures. International Fidelity does not attempt to explain why section 1305.3 would provide for county counsel to recover costs and attorney fees "incurred in successfully opposing a motion to vacate the forfeiture" if county counsel lacks standing to oppose a motion to vacate forfeiture.

In the present case, both the district attorney and county counsel were present at the hearing on International Fidelity's motion to toll time. County counsel's presence was consistent with the San Mateo County ordinance designating county counsel as the agency to receive notice in bail forfeiture proceedings, as well as with the state bail statutes, and we are aware of nothing in the statutes that would preclude both agencies appearing.

International Fidelity's complaint is that the trial court agreed with an objection made by county counsel that International Fidelity believes would not have been made by the district attorney. Section 1305, subdivision (h), upon which the surety's motion was based, provides for tolling of the 180-day period where the prosecuting agency and bail agent agree that additional time is needed for extradition of a defendant who has been

13

located in another jurisdiction; among the conditions for application of the statute, the prosecutor must have elected to pursue extradition and agreed to tolling. (See § 1305, subds. (g) & (h).) International Fidelity argues that here, county counsel objected to its motion despite the district attorney having elected to extradite the defendant and agreed with the surety's request to toll the appearance period—in effect, that county counsel's objection interfered with tolling that the prosecutor wanted to allow. This is not entirely accurate: While the prosecutor stated that she wanted the defendant to be found and that her office was "willing to work on extradition," she expressly deferred to county counsel on the applicability of the statutes, stating, "[t]his is not my area of the law, and I did not research it knowing that this was an issue for—between County Counsel and the bail agency."[11] County counsel did not undermine the prosecutor's position; the prosecutor chose to defer to county counsel's knowledge of the applicable law, and told the court she had no formal agreement with the bail agent on tolling. Moreover, as will also be explained in the next section of this opinion, the trial court was correct in concluding that the statutes International Fidelity relied upon did not apply. Regardless of which attorney raised the objection, the court would have erred if it had granted the surety's motion.

## II.

As we have said, the tolling provision of section 1305, subdivision (h), applies in circumstances "arising under" subdivision (g): "In cases arising under subdivision (g), if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, and the prosecuting agency agrees to the tolling of the 180-day period, the court may, on the basis of the agreement, toll the 180-

---

[11] At the hearing, when International Fidelity argued that the policy of section 1305, subdivision (h), was to allow time for the bail agent to continue its efforts if the district attorney wanted it to do so, and that "as the [district attorney] has spoken they would like the bail agent to continue on those . . . efforts," the court commented that this sounded "very speculative" and "it doesn't sound like you've had a meeting of the minds with the prosecutor."

14

day period within which to vacate the forfeiture. The court may order tolling for up to the length of time agreed upon by the parties." (§ 1305, subd. (h).)

Subdivision (g) of section 1305, provides: "(g) In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

The trial court found section 1305, subdivision (h), did not apply because the case did not "arise under subdivision (g)." Assuming the correctness of International Fidelity's representations that the defendant was "not in custody" and was "beyond the jurisdiction of the state" (in Mexico) the remaining conditions stated in subdivision (g) were not met: There was no showing that the defendant was "temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which [he was] located," that he had been "positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury" or that the "prosecuting agency" had "elect[ed] not to seek extradition after being informed of the location of the defendant." (§ 1305, subd. (g).)

International Fidelity argues that the trial court "should be authorized" to toll time under section 1305, subdivision (h), where a prosecutor elects to extradite the defendant and agrees to the tolling but waives the statutory requirement of a section 1305, subdivision (g), affidavit. As the quoted phrasing suggests, this argument seeks an interpretation of the relevant statutes that goes beyond their literal meaning.

International Fidelity urges that the "precise requirements" of subdivision (g) of section 1305, which are prerequisites to the exoneration of bail authorized by subdivision (g), do not apply in the present case because subdivision (h) does not provide for

15

exoneration of bail, only for tolling of the time period "to allow the bail agent and prosecuting agency to expend more resources to aid in the extradition of the defendant." The surety points out that subdivision (h) applies only when a prosecutor elects to seek extradition of the defendant, which necessarily makes inapplicable the requirement of subdivision (g) that the prosecutor has elected *not* to pursue extradition. According to International Fidelity, the "precise requirements" of subdivision (h) were left vague "to allow for the discretion of the prosecutor to be the primary factor in allowing a bail agent additional time to return a defendant to court." It is argued that situations "arising under subdivision (g)"—and therefore subject to tolling under section (h)—include ones "where 'a defendant is not in custody and is beyond the jurisdiction of the state' and a tolling of time is needed in order for an international extradition to take place," even if the other requirements of subdivision (g) have not been satisfied.

This reading of subdivision (h) as predicated upon only the first two conditions stated in subdivision (g)—the defendant is not in custody and is beyond the jurisdiction of the state—is not supported by the legislative history. That history instead indicates that the tolling provision was intended to address the situation where all the conditions stated in subdivision (g) have been met except the prosecutor's election not to extradite— the out-of-custody and out-of-jurisdiction defendant has been temporarily detained by the bail agent in the presence of a local law enforcement officer and positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury—but the often complicated process of extradition requires additional time. The prosecutor's election *not* to seek extradition, of course, is the reason subdivision *(g)* authorizes exoneration of bail: The surety has fulfilled its obligations by providing the prosecutor with proof of the defendant's location and cannot physically return the defendant to court without the prosecutor seeking extradition. Subdivision (h) does not directly provide for exoneration of bail; it is expressly aimed at returning the defendant to court, allowing additional time for this return to be accomplished in cases where the circumstances of subdivision (g) exist—a defendant has been located outside the jurisdiction, is not in custody, has been temporarily detained by the bail agent and

16

positively identified by a local law enforcement officer, and the prosecutor has been informed of the defendant's location—and the prosecutor elects to pursue extradition so as to bring the defendant before the California court.

Subdivision (g) was added to section 1305 in 1995 (Stats. 1995, ch. 434, § 1) to eliminate the anomaly that resulted from the fact that bail could be exonerated under section 1305, subdivision (f), if the California prosecutor elected not to seek extradition of a defendant who was taken into custody in another jurisdiction, but no exoneration of bail was available for a defendant who fled California and was not taken into custody in the foreign jurisdiction. (*County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661, 664-665.) "Bail agents had little incentive to hunt for these bail-jumpers" because, without assurance that bail will be exonerated once the bail agent has located the defendant, " 'it is not economically feasible for [the agent] to invest the considerable funds necessary to locate these fugitives.' " (*Id.* at p. 665, quoting Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1245 (1995–1996 Reg. Sess.) as amended June 19, 1995, p. 3.)

Subdivision (h) was added to section 1305 in 2012. (Stats. 2012, ch. 129, § 1.) Its legislative history shows that it was intended to address a problem that could arise in the circumstances addressed by subdivision (g) if a defendant was located in a foreign jurisdiction late in the appearance period. As discussed in legislative committee reports, if the prosecutor sought to extradite a defendant found in a foreign jurisdiction late in the 180-day appearance period, with insufficient time remaining to complete the extradition process, bail would not be exonerated despite the bail agent having located the defendant. A Senate Public Safety Committee analysis stated that "[a]ccording to the author . . . [a] problem arises where the prosecutor declines to make a decision about extradition in a timely fashion. Often, a good portion of the 180-day period is spent locating the fugitive. Once the fugitive is located and the prosecutor is notified, the prosecutor sometimes fails to decide about extradition with the 180-period. Because bail agents run the risk of forfeiture, current law creates a disincentive to track down a fugitive near the end of the 180-day period, as there is no practical way for the agent to exonerate the bond prior to

17

the deadline.  As a result, agents are reluctant to expend the resources necessary to locate fugitives." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011-2012 Reg. Sess.) as amended May 1, 2012, p. 2.)

A statement by Two Jinn, Inc., doing business under the name of Aladdin Bail Bonds in support of the bill elaborates the point:  " 'The bill will further the principal purpose of Penal Code section 1305 by promoting the location and return of fugitives from justice.  Under the current law, if the 180-day clock is drawing to a close, bail agents may be unwilling to risk the expense of traveling to foreign jurisdictions to attempt to locate a fugitive, even if they have a strong probability of locating him.  This is because while they may locate the fugitive within the 180-day window, they know that the extradition process is unlikely to be completed prior to the time at which they must forfeit the bond.  In a perverse way, the longer a fugitive can elude authorities, the greater the chance he will escape entirely, because there is an economic disincentive for bail agents to attempt to recapture him.  SB 989 will change this to accomplish the original purpose—encourage bail agents to spend every last moment of the 180-day window attempting to locate fugitives.' " (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 989 (2011-2012 Reg. Sess.) as amended May 17, 2012, p. 4.)  According to this statement of support, " '[t]his modest bill would allow the court to postpone the forfeiture of bail bonds in cases where additional time is necessary to extradite defendants from foreign jurisdictions.' " (*Ibid.*)[12]  The bill's author similarly stated, " 'This bill simply

---

[12] The statement of support emphasized that the prosecutor would retain control over whether forfeiture should be postponed to allow time for extradition from a foreign jurisdiction:  "Importantly, the forfeiture could be postponed only when the local prosecutor agrees to a postponement.  The bill gives district attorneys complete control over whether any postponements will be granted.  The bill also adds a notice requirement so that prosecutors will be informed of any motions brought by bail agents relating to bond exoneration.' " (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 989 (2011-2012 Reg. Sess.) as amended May 17, 2012, p. 4.)  This prosecutorial control was critical to the California District Attorneys Association, which initially opposed the legislation but later stated that it would remove its opposition if the bill clarified that a prosecutor's decision on extension of the appearance period was final and not appealable by the bail agent.  (Assem. Com. on Pub. Safety Report on Sen. Bill No. 989 (2011-2012 Reg. Sess.)

18

allows both parties to come to an agreement if more time is needed to return a fugitive to custody.' " (*Id.* at p. 3.)

As summarized in the Legislative Counsel's Digest, "Existing law requires the court to vacate the forfeiture and exonerate the bond, as specified, if the defendant is not in custody, is beyond the jurisdiction of the state, is temporarily detained and positively identified, as specified, and the prosecuting agency selects not to seek extradition after being informed of the defendant's location. [¶] This bill would authorize a court, *under the circumstance described above*, to toll the 180–day period within which to vacate the forfeiture for the length of time agreed upon by the parties if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, and the prosecuting agency agrees to the tolling of the 180–day period." (Legis. Counsel's Dig., Sen. Bill No. 989 (2011-2012 Sess.), italics added.)

This history reflects a legislative intention to encourage bail agents to search diligently for fugitive defendants throughout the 180-day period by providing a mechanism for extending the period where necessary to complete the extradition process. There is no suggestion in the legislative history that the Legislature intended to create an exception to the time limits set by the bail statutes simply to allow bail agents additional time to search for missing defendants.[13]

---

as amended May 17, 2012, pp. 4-5.) "This association has historically raised concerns about providing bail agents with additional time to avoid the forfeiture of bail given the extensive consideration already provided by current law. That said, if this bill is amended to clarify that a prosecutor's decision relative to whether the 180-day period should be extended is (1) final and (2) not appealable by the bail agent, we would remove our opposition." (*Ibid*.)

[13] The provision applicable where a surety seeks additional time to investigate a defendant's whereabouts is section 1305.4: "Notwithstanding Section 1305, the surety insurer, the bail agent, the surety, or the depositor may file a motion, based upon good cause, for an order extending the 180-day period provided in that section. The motion shall include a declaration or affidavit that states the reasons showing good cause to extend that period. The court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days from its order. A motion may be filed and calendared as provided in subdivision (j) of Section 1305. In addition to any

*People v. Tingcungco* (2015) 237 Cal.App.4th 249 (*Tingcungco*), is instructive.  In that case, as here, bail was forfeited when the defendant failed to appear in court as ordered, the appearance period was extended, and at the end of the extended period the surety moved to toll the appearance period under section 1305, subdivision (h).  The surety had notified the district attorney's office three days before the end of the appearance period that the defendant had been located in Mexico and asked it to decide whether to begin extradition proceedings.  (*Tingcungco*, at p. 252.)  Its motion sought to toll the appearance period while the prosecutor decided whether to pursue extradition.  (*Id.* at p. 252.)  The trial court denied the motion; on appeal, the surety argued that it had complied with all its obligations under section 1305, subdivision (g), and its right to exoneration "should not be frustrated by matters solely within the prosecutor's control— the decision whether to extradite."  (*Tingcungco*, at p. 256.)

The *Tingcungco* court rejected the surety's arguments based on the legislative history of subdivisions (g) and (h) of section 1305.  In a prior case, *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, the surety had notified the prosecutor eight months before the end of the appearance period that the defendant had been located in a foreign country and the prosecutor said she would seek extradition but did not initiate the process before the end of the period.  (*Tingcungco, supra,* 237 Cal.App.4th at p. 254.)  The trial court denied a motion to either exonerate bail or toll the period to allow the prosecutor to pursue extradition, and *Seneca* affirmed.  (*Tingcungco*, at p. 254.)  In apparent response to *Seneca*, a bill was introduced to amend section 1305, subdivision (g), to provide for exoneration in cases where the prosecutor failed to make a decision on extradition within a reasonable time " 'after receipt of the [notification] affidavit,' " for tolling pending the prosecutor's decision, and, if the prosecutor proceeds with extradition, for tolling until

---

other notice required by law, the moving party shall give the prosecuting agency a written notice at least 10 court days before a hearing held pursuant to this section as a condition precedent to granting the motion."

completion of the process.[14] (*Tingcungco,* at p. 255.) A bill analysis stated that according to its author, "the bill was needed ' "where the prosecutor declines to make a decision about extradition in a timely fashion." ' (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011-2012 Reg. Sess.) Apr. 24, 2012, p. 5.)" The bill was amended, however, to eliminate the provisions regarding delay in the prosecutor's decision on extradition and replace them with the substance of what is now subdivision (h) of section 1305, which allows the trial court to extend the period where necessary to allow time to accomplish extradition of a defendant only *after* a decision to extradite has been made. (*Tingcungco*, at pp. 255-257.)

Given this legislative history, *Tingcongco* held that subdivision (h) of section 1305 "allows tolling only after the prosecutor has decided to extradite but needs more time to do so." (*Tingcungco, supra,* 237 Cal.App.4th at p. 258.) It seems apparent that if the Legislature chose not to permit tolling of the appearance period to allow a prosecutor time to decide whether to seek extradition where the surety had done all it could to perform its obligations by locating the defendant, detaining him or her and having him or her identified as described in subdivision (g) of section 1305, it did not intend to permit tolling where the surety had yet to complete even the preliminary steps of locating, detaining and obtaining positive identification of the defendant.

---

[14] As introduced, subdivision (g) of section 1305 would have included the following: "If the prosecuting agency or the United States Attorney fails to make an extradition decision within a reasonable period of time after receipt of the affidavit the bond shall be exonerated. The court shall order the tolling of the 180-day period provided in this section pending the prosecuting agency's or the United States Attorney's extradition decision. If the prosecuting agency or the United States Attorney proceeds with the extradition, and upon motion by the surety or bail agent, the court shall order the tolling of the 180-day period provided in this section from the date on which the surety or bail agent delivered the affidavit to the prosecuting agency or the United States Attorney until such time as the bond is exonerated or the extradition process is completed." (Sen. Bill No. 989 (2011-2012 Reg. Sess.) as introduced Feb. 1, 2012.) This provision was deleted in the May 1, 2012, draft of the bill. (Sen. Bill No. 989 (2011-2012 Reg. Sess.) as amended May 1, 2012.)

International Fidelity urges that a court has plenary power to "continue monitoring" a case in which it has granted a motion to toll time. It cites *People v. United Bonding Insurance Co.* (1970) 12 Cal.App.3d 349, 352 (*United Bonding*), in which the surety had located the defendant in a specified town in Mexico and brought him to the United States border with the local police chief, but a magistrate refused to allow the defendant to enter the United States because of Mexican authorities' orders restricting the defendant to the area of the town. The trial court denied the surety's motion to set aside the bail forfeiture, believing relief was available only if the defendant was in actual physical custody in Mexico. (*Id.* at p. 352.) Reversing and remanding for further proceedings, *United Bonding* held that it was sufficient to prove the defendant was "restrained by civil authorities" and this restraint prevented him from appearing as ordered. (*Id.* at pp. 352-353.) Noting that two years had passed since the alleged detention in Mexico, *United Bonding* directed the trial court to determine the defendant's status and render judgment accordingly, with the surety's liability suspended pending the trial court's determination. (*Id.* at p. 355.)

International Fidelity relies on a portion of the *United Bonding* opinion in which the court observed that "relief from bail forfeiture, when the restriction is by confinement of a defendant in a sister state or foreign nation, does not excuse or exonerate bail. The liability of the surety is merely suspended during the detention by the civil authorities in that state or country. There is ample time and authority when the foreign detention ends to invoke the penalty in the event of defendant's voluntary failure to appear. The trial court has plenary power to impose conditions upon the surety to submit proof of the continued inability of defendant to appear because of his detention or to suffer the penalty of bail forfeiture. Thus, the liability of the insured is merely postponed. [Citation.] When the circumstances in the future no longer justify a failure to appear on the grounds presently asserted, the surety would then be required to either produce the defendant or to suffer the penalty of forfeiture of the bail." (*United Bonding, supra,* 12 Cal.App.3d. at pp. 354–355.)

22

International Fidelity's reliance upon *United Bonding* is misplaced. In that case, the surety had located the defendant and attempted to bring him back to the United States, but was prevented from doing so because the defendant had been detained by Mexican authorities. That situation fell directly within a provision of section 1305 that, at the time, required the court to discharge a forfeiture "upon such terms as may be just" if the defendant was "physically unable . . . by reason of detention by civil or military authorities, to appear in court" during the appearance period . . . .[15] (§ 1305.) What International Fidelity refers to as "monitoring" was, in effect, a suspension of the surety's liability during the period in which the defendant's detention prevented him from appearing in court. That situation is entirely different from that International Fidelity posits in the present case, which is a tolling of the appearance period to allow further *investigation* in an attempt to locate a defendant whose specific whereabouts in Mexico are apparently unknown.

## III.

International Fidelity's final contention is that the trial court lacked jurisdiction to declare a forfeiture before 10:00 a.m. on January 24, its order purporting to do shortly after court convened at 9:18 a.m. was void, and, therefore, the summary judgment must be set aside and bail exonerated.

---

[15] The statute as quoted in *United Bonding* provided, " 'If within 180 days after such entry [of bail forfeiture] . . . it be made to appear to the satisfaction of the court that the defendant is dead or is physically unable, by reason of illness or insanity, or by reason of detention by civil or military authorities, to appear in court at any time during said 180 days . . . .' " (*United Bonding*, *supra*, 12 Cal.3d at p. 353.) Under the present version of section 1305, the relevant provision would be subdivision (e)(1)(A): "In the case of a temporary disability, the court shall order the tolling of the 180-day period provided in this section during the period of temporary disability, provided that it appears to the satisfaction of the court that the following conditions are met:

"(A) The defendant is temporarily disabled by reason of . . . detention by military or civil authorities.

"(B) Based upon the temporary disability, the defendant is unable to appear in court during the remainder of the 180-day period. . . ."

23

As set forth above, the defendant had been ordered to appear for sentencing on January 24, 2014, with the hearing set for 10:00 a.m. On January 21, the court vacated the 10:00 a.m. hearing and reset the matter for an hour earlier, 9:00 a.m. on January 24. On January 24, court convened at 9:18 a.m., with defense counsel[16] and the prosecutor present; the defendant was not present. The entry for January 24 in the court's register of actions states, "The probation report [and] sentencing needs to be reset as Judge Novak (Department 13) is unavailable today." The prosecutor advised the court that Judge Novak, the trial judge, had set bail at $300,000, the defendant had posted bail, and, as the defendant had failed to appear, the People requested a no bail warrant. Defense counsel told the court that the defendant's wife had reported him as a missing person and that on the date scheduled for the defendant's probation interview, counsel had informed the probation officer that he did not know where the defendant was and did not expect him to appear. Counsel stated that he understood the prosecutor's request and was submitting because "I don't see that the court has much choice."

International Fidelity's argument is built on the strict construction applied to the requirements of the bail statutes. " 'Bail forfeiture statutes are jurisdictional and, if not strictly followed, the court loses jurisdiction to later declare a forfeiture of the bond. (*People v. Ranger Ins. Co.* (1998) 66 Cal.App.4th 1549, 1552; *People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 921.) Because of the ' " ' "harsh results" ' " ' of a forfeiture, 'technical violations' of the bail statutes are not tolerated and will defeat the court's jurisdiction to order a forfeiture. (*People v. National Automobile & Casualty Ins. Co.* (2002) 98 Cal.App.4th 277, 287, 290 (*National Automobile*); see *People v. American Contractors Indemnity Co.* (2001) 91 Cal.App.4th 799, 805–810; *People v. Frontier Pacific Ins. Co.* (2000) 83 Cal.App.4th 1289, 1294; *People v. Surety Ins. Co.* (1985) 165

---

[16] As earlier described, attorney Armstrong sought to substitute in as the defendant's attorney of record for sentencing in place of the attorney who had tried the case. After discussion of the bail situation, the court denied the substitution request, stating, "Right now the defendant has absconded and there's a no bail warrant for him and we'll worry about who the lawyer is when we finally see him."

Cal.App.3d 22, 28–30.)  Additionally, the statutory requirements ' "are considered inviolable and do not depend on whether or not a party has suffered prejudice." ' (*National Automobile, supra,* 98 Cal.App.4th at p. 291, fn. 33; *People v. American Contractors Indemnity Co.*, . . . at p. 810.)"  (*People v. Bankers Ins. Co.* (2009) 171 Cal.App.4th 1529, 1532.)

At the same time, "[w]ords used will be given the meaning that ' "reason and justice require . . . , rather than a literal meaning which would lead to an unjust and absurd consequence." ' (*People v. American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289, 1295, overruled on another ground in *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120.)  Courts do not ' "blindly follow the literal meaning of every word if to do so would frustrate the legislative purpose." ' (*People v. Ranger Ins. Co.* [(1996) 51 Cal.App.4th 1379,] 1384, italics omitted.)  The provisions of section 1305 in particular must be accorded 'a reasonable, commonsense construction in line with [their] apparent purpose, in order to advance wise legislative policy and avoid absurdity.' (*People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1307, 343.)"  (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 153.)

International Fidelity stresses that a forfeiture cannot be declared before the *time* as well as the date for which his or her appearance was required.  Under section 1305, subdivision (a), " 'A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following:  [¶]  (1) Arraignment.  [¶]  (2) Trial.  [¶]  (3) Judgment. [¶]  (4) *Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required.*  [¶]  (5) To surrender himself or herself in execution of the judgment after appeal.' (Italics added.)"  (*Safety National, supra,* 62 Cal.4th at pp. 709-710.)  "For purposes of section 1305[, subdivision] (a), a defendant's presence may be deemed 'lawfully required' when a specific court order commands his or her appearance at a date and time certain (see *People v. Classified Ins. Corp.* (1985) 164 Cal.App.3d 341, 344 [(*Classified Insurance*)]; cf. *People v. Sacramento Bail Bonds* (1989) 210 Cal.App.3d 118, 122), or when a defendant has actual notice of a mandatory

25

appearance—even without a court order—because he or she was present when the date and time of the appearance was set (see *People v. American Bankers Ins. Co.* (1990) 225 Cal.App.3d 1378, 1383). (See *People v. Ranger Ins. Co.* (1992) 6 Cal.App.4th 1301, 1304.)" (*Safety National*, at p. 710.)

International Fidelity views the present case as "substantially similar" to *People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663 (*North Beach Bonding*), disapproved by *Safety National, supra,* 62 Cal.4th 703, regarding application of section 977).[17] The defendant in *North Beach Bonding* was granted a stay of execution of sentence and ordered to surrender himself to the sheriff at 5:00 p.m. on March 24, 1972. (*North Beach Bonding*, at p. 667.) At 3:30 p.m. on March 24, defense counsel, without the defendant, presented the court with an application for a stay of execution of sentence,

---

[17] It was argued in *North Beach Bonding* that the defendant was required to be at a hearing prior to the time he was originally ordered to appear by virtue of section 977, subdivision (b), which enumerates certain stages of the proceedings at which a defendant must be present, then states that the defendant must be present at all others absent a written waiver, executed in open court by leave of the court, approved by defense counsel and filed with the court. The *North Beach Bonding* court intimated that section 977 is not relevant to bail forfeiture because it was "designed to implement the defendant's due process right to be present at his trial and other hearings." (*North Beach Bonding, supra,* 36 Cal.App.3d at p. 669.)

The California Supreme Court disapproved *North Beach Bonding* and another case, *Classified Insurance, supra,* 164 Cal.App.3d 341, "to the extent they rejected outright section 977(b)(1)'s application to section 1305's bail forfeiture proceedings." (*Safety National, supra,* 62 Cal.4th at p. 716, fn. 5.) *Safety National* noted that section 977 may require the defendant's presence at proceedings for which the constitution would not, and that "in the bail bond context, a defendant's required presence serves another purpose beyond guaranteeing the right to be present: '[T]he broad definition of bail implies its purpose to be that of a tool to assure the ability of society to protect itself by lawfully conducted criminal prosecution.' (*People v. Semecal* [(1968)] 264 Cal.App.2d [Supp. 985,] 992.) In other words, construed together section 977(b)(1) and section 1305 'are not only compatible with the constitutional guarantee of due process, but also constitute an appropriate legislative design to assure the orderly administration of the judicial process.' (*Semecal,* at pp. Supp. 989–990.)" (*Safety National*, at pp. 715–716.)

which was denied. The defendant failed to surrender himself, and three days later the court filed an order stating that his bail was forfeited. (*Id.* at pp. 667-668.)

One of the surety's arguments[18] was that the trial court lacked jurisdiction to declare a forfeiture when the defendant did not appear as ordered at 5:00 p.m. because it failed to declare a forfeiture when he failed to appear at 3:30 p.m. (*North Beach Bonding, supra,* 36 Cal.App.3d at p. 669.) This argument was based on the principle that "the court's failure to declare a forfeiture upon a nonappearance without sufficient excuse . . . deprives the court of jurisdiction to later declare a forfeiture." (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 907; *Safety National, supra,* 62 Cal.4th at p. 710 [if a court "fails to declare a forfeiture *at the time* of the defendant's unexcused absence, it is without jurisdiction to do so later"].) It was contended in *North Beach Bonding* that the defendant was required to be at the 3:30 hearing under the authority of section 977.[19] Rejecting the argument, the *North Beach Bonding* court stated, "It is absurd to contend that an attorney by appearing without his client an hour and one-half before the latter was directed to appear could place his client in default. The remedy, if the appearance of the defendant was necessary, was to refuse to entertain the motions without the presence of the defendant." (*North Beach Bonding,* at p. 669.)[20]

---

[18] The primary issue in the case was the surety's argument that its obligations were fully performed when the defendant appeared for pronouncement of judgment and did not extend to ensuring the defendant's surrender after the court stayed execution of sentence. The court agreed and reversed the trial court's order denying the surety's motion to set aside the forfeiture and exonerate bail. (*North Beach Bonding, supra,* 36 Cal.App.3d at pp. 670-675.)

[19] See footnote 14, *ante.*

[20] *North Beach Bonding* differs from the present case in that the 3:30 p.m. appearance by defense counsel was not for a scheduled hearing at which the defendant had been ordered to appear but rather on a motion to stay or continue the time at which he had been instructed to surrender. As has been noted in other circumstances, "The purpose of bail is to ensure the defendant's appearance at hearings which are set. (*People v. Surety Ins. Co.* (1978) 77 Cal.App.3d 533, 537.) If a hearing is not set, a defendant cannot fail to appear for purposes of bond forfeiture." (*People v. Ranger Ins. Co., supra,* 6 Cal.App.4th at p. 1306.)

27

Other cases demonstrate the same point, that a forfeiture cannot be declared prior to the time a defendant was ordered to appear. In *People v. Resolute Insurance Co.* (1968) 259 Cal.App.2d 633 (disapproved on other grounds in *People v. United Bonding Ins. Co.*, *supra*, 5 Cal.3d at p. 908), three days before the date the defendant had been ordered to appear and without notice to the defendant or the surety, the court issued a bench warrant and declared bail forfeited on the prosecutor's representation that the defendant was in custody in Canada. (*Resolute Insurance Co.*, at p. 635.) The forfeiture order was held void because trial court lacked jurisdiction to declare the forfeiture on March 30, as the defendant "on March 30 had not neglected to appear for a trial which was set for April 2." (*Id.* at p. 636.) In *Classified Insurance, supra,* 164 Cal.App.3d 341, the defendant was released on bail pending trial set for May 2, 1983. The court declared forfeiture at a hearing in March on a defense motion to set aside the information, when defense counsel said he had lost contact with the defendant. (*Id.* at p. 343.) The forfeiture order was held to be void because the defendant was not required to appear at the March hearing. (*Id.* at p. 347.) *In People v. American Contractors Indemnity Co.*, *supra*, 91 Cal.App.4th 799, although premature forfeiture was not an issue on the appeal, the case background demonstrates the People, the trial court and the Court of Appeal all recognized that a forfeiter declared prior to the date on which the defendant had been ordered to appear was void. The trial court had erroneously declared forfeiture in March, a month before the scheduled hearing at which the defendant was ordered to appear, when the prosecutor moved to revoke bail due to suspicion that the defendant had fled the country, and the court mailed notice to the surety of the period in which it could seek to set aside the forfeiture. (*Id*. at p. 802.) The court later granted the surety's motion to vacate this forfeiture, recognizing that the defendant had not been ordered to be present on that date. (*Ibid*.; see *People v. Ranger Ins. Co., supra,* 6 Cal.App.4th at pp. 1303, 1305-1306 [affirming forfeiture declared on defendant's failure to appear for trial; failure to declare forfeiture at earlier case review hearing did not preclude subsequent forfeiture because defendant not required to be present at earlier hearing].)

In the present case, the defendant was ordered to appear at 10:00 a.m. on January 24, and the forfeiture was declared shortly after 9:18 a.m. Respondent's assertion that the time disparity did not matter because the court ordered the defendant to appear *on that date* is not persuasive. The record reflects that appellant was in court on November 19, 2013, when the question of his release on bail pending sentencing was discussed and the sentencing hearing was set. After a brief discussion between counsel and the court about the date for sentencing, the court stated: "January 24 at 10:00 a.m. I will be doing a different assignment which will have me occupied at 9:00 a.m. I don't need you folks sitting around for an hour while I do those other matters. [¶] January 24 at 10:00 a.m. [¶] [Defendant], you are ordered to return on that date."

Respondent maintains that the court "was not having a conversation with defendant" and "did not order the defendant to return at 10:00 a.m. on January 24, 2014" but only "to return on that date" This view is unreasonable. The court clearly did not intend the defendant to appear in court prior to 10:00 a.m.: It expressly stated that it was setting the hearing for 10:00 a.m. because the court would be occupied with other matters prior to that time. The sentencing hearing was set for a specific time and January 24, and that is when the defendant was ordered to return to court.

Moreover, what is at issue in the present case is not the consequences to the defendant of his failure to appear as ordered but the consequences to appellant. As explained above, appellant entered into a contract with the government as guarantor of the defendant's appearance. (*Safety National, supra,* 62 Cal.4th at p. 709.) The defendant's failure to appear "constitutes a 'breach of the contract,' " which requires appellant to pay the $300,000 bond. (*Ibid*., quoting *People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at pp. 657-658.) "The scope of a surety's contractual obligation under the appeal bond is defined by applicable statutory law and language of the bond itself." (*People v. Allen* (1994) 28 Cal.App.4th 575, 581.) Here, the bail bond face sheet and jail receipt state the date and time for the defendant's appearance as 10:00 a.m. on January 24, 2014, confirming that appellant's contractual obligation was to ensure the defendant appear in court on January 24, 2014, *at 10:00 a.m.*

29

Contrary to respondent's suggestion, it is of no moment that that the defendant's attorney did not assure the court that the defendant would appear at 10:00 a.m. The "jurisdictional prerequisites" to a court declaring a forfeiture of bail are "the defendant's failure to appear at an enumerated proceeding or on another occasion as 'lawfully required,' and the lack of a sufficient excuse for the defendant's nonappearance." (*Safety National, supra,* 62 Cal.4th at pp. 709-710.) Respondent cites cases standing for the proposition that the court has discretion to not declare forfeiture immediately upon a defendant's failure to appear as required where it appears the failure to appear may be excusable. (*People v. United Bonding Ins. Co., supra,* 5 Cal.3d at pp. 905-906; *People v. American Bankers Ins. Co.* (1989) 215 Cal.App.3d 1363 1368-1369; *People v. National Automobile & Cas. Co.* (1969) 276 Cal.App.2d 480, 483-484.) Conversely, as previously indicated, when a defendant fails to appear as required "without sufficient excuse," forfeiture must be timely declared. (*United Bonding Ins. Co.*, at p. 906.) These cases effectuate the directive of section 1305 that a court declare a forfeiture if a defendant fails to appear as lawfully required "without sufficient excuse." Nothing in the case, however, suggests that the court may declare a forfeiture *prior* to the time the defendant is required to appear—even where, as here, it appears certain the defendant will not appear at the designated time and counsel does not represent that the defendant will in fact appear that time.

The problem in this case (and the main difference between this case and those cited by the parties) is that the hearing at which the defendant was ordered to appear was unilaterally moved earlier by the court. Counsel were obviously informed of the change in some manner, as both the prosecutor and the attorney seeking to substitute in as defense counsel were present at 9:00 a.m. To our knowledge, the record contains no information about how the changed schedule was communicated and whether any attempt was made to provide notice to the defendant personally. Given the defense attorney's representation to the court that he had no idea where the defendant was, it is unlikely the attorney would have been able to inform the defendant of the change. And there is no indication in the record that appellant, as guarantor of defendant's appearance,

30

had any reason to know the hearing would be held an hour earlier than the time stated on the bail bond.

Respondent's frustration in the case is not unwarranted. The time of the hearing was changed by the court and it appears to have been obvious to all present that the defendant would not be appearing. Had the court waited the 42 minutes until 10:00 a.m., when the defendant was legally required to appear, before declaring the forfeiture, there would have been no question that the forfeiture was valid. Instead, by virtue of the court's error in proceeding as it did, appellant will avoid liability on the bond despite having failed to locate the defendant and return him to court during the period of more than a year between the declaration of forfeiture on January 24, 2014, and the trial court's April 23, 2015 denial of the surety's motion for tolling and subsequent entry of summary judgment.

Nevertheless, respondent's argument that waiting until 10:00 a.m. before declaring the forfeiture would have been "the epitome of an idle act," while understandable, is untenable. Respondent cites *People v. American Bankers Ins. Co., supra,* 225 Cal.App.3d at page 1383, in arguing that appellant's contention that the trial court lacked jurisdiction to order a forfeiture before 10:00 a.m. on January 24, 2014, is "specious" and "exalts form over substance." *American Bankers Ins. Co.* "rejected as unreasonable" an argument that the trial court lost jurisdiction to forfeit bail when it failed to do so upon the defendant's failure to appear on the date set for a section 995 hearing that predated the trial confirmation hearing at which forfeiture was declared. Because it would be "untenable to construe section 1305 as requiring a defendant's presence at a nonexistent hearing," the court stated, the jurisdictional argument "exalts form over substance." (*American Bankers Ins. Co.*, at p. 1383.)

Unlike the argument in *People v. American Bankers Ins. Co.*, which attempted to apply a technically correct rule—that a court cannot later order forfeiture after failing to do so upon the defendant's failure to appear as required on an earlier date (*People v. United Bonding Ins. Co., supra*, 5 Cal.3d at p. 907; *Safety National, supra,* 62 Cal.4th at p. 710)—in an unreasonable manner, respondent here is really making a prejudice

31

argument that there was no harm in the court forfeiting bail at 9:18 a.m. because it was clear the defendant would not appear as ordered at 10:00 a.m.  Appealing as that argument may be on the facts of this case, it cannot prevail.  As we have said, the bail forfeiture statutes are jurisdictional, and prejudice, or lack thereof, is not a relevant consideration.  The defendant was not legally obligated to appear in court before 10:00 a.m. on January 24, 2014, and appellant was not legally bound to ensure his presence before that time.  The forfeiture declared at 9:18 on January 24, 2014, was invalid.  Consequently, the summary judgment must be reversed and the bond exonerated.

**DISPOSITION**

The judgment is reversed.  The forfeiture is vacated and the bail bond is exonerated.

                                  _____

                                  Kline, P.J.

We concur:

_____

Stewart, J.


_____

Miller, J.

*People v. International Fidelity Insurance Company* (A145993)

33

Trial Judge:                        Hon. Leland Davis III

Trial Court:                     San Mateo County Superior Court

Counsel for Appellant:       Law Office of John M. Rorabaugh
John M. Rorabaugh
Robert Tomlin White

Counsel for Respondent:     Office of County Counsel
Peter K. Finck, Deputy County Counsel